UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>RANDALL CRATER,<br><br>Defendant | Criminal No. *Mce/10063*<br><br>Violations:<br><br>Counts One – Four: Wire Fraud<br>(18 U.S.C. § 1343)<br><br>Counts Five – Seven: Unlawful Monetary Transactions<br>(18 U.S.C. § 1957)<br><br>Forfeiture Allegations:<br>(18 U.S.C. §§ 981(a)(1)(C), 982(a)(1) and 28 U.S.C. § 2461) |

## INDICTMENT

At all times relevant to this Indictment:

### General Allegations

1. Defendant Randall Crater ("CRATER") was a resident of New York. CRATER was the principal operator of My Big Coin Pay, Inc. ("My Big Coin"), a purported virtual currency company.

2. My Big Coin was a Nevada corporation with its principal place of business in Las Vegas, Nevada. My Big Coin purported to engage in the business of marketing and selling a proprietary virtual currency called "My Big Coins" or "Coins" to the investing public.

3. Individual 1 was a resident of California who served as Chief Executive Officer of My Big Coin.

4. Individual 2 was a resident of Michigan who promoted My Big Coin and solicited potential investors and customers.

### Background

5. Virtual currency, sometimes referred to as "cryptocurrency," is a digital asset or digital representation of value that can be electronically traded and exchanged online. Virtual currency is not backed or insured by a central bank and its value may or may not be tied to or secured by a fixed asset.

6. A virtual currency exchange is an electronic forum in which virtual currencies can be exchanged for other assets, such as paper currencies backed by governments or other virtual currencies.

### Scheme to Defraud

7. Beginning in or around 2014 until at least in or around 2017, CRATER, together with Individuals 1 and 2, and others known and unknown to the Grand Jury, executed a scheme to defraud investors by soliciting investments in My Big Coin and Coins. Among other things, CRATER, together with Individuals 1 and 2, and others known and unknown to the Grand Jury, falsely claimed that Coins were a functioning virtual currency that had value, were backed by gold and other assets, and could be traded on a virtual currency exchange. In reality, Coins were not backed by gold or other assets, were not readily exchangeable virtual currency, and had little to no actual value. Rather, CRATER misappropriated more than $6 million of investor money for personal use.

### Objectives of the Scheme

8. The principal objectives of the scheme to defraud were for CRATER, together with Individuals 1 and 2, and others known and unknown to the Grand Jury, to: (i) enrich themselves; (ii) solicit and obtain millions of dollars in investor funds through false and misleading statements,

representations, and promises; and (iii) conceal from investors the nature and manner in which they were using investor funds.

## Manner and Means of the Scheme

9.  Among the manner and means by which CRATER, together with Individuals 1 and 2, and others known and unknown to the Grand Jury, carried out the scheme to defraud were the following:

   a. Making multiple misrepresentations to investors and prospective investors about Coins and My Big Coin such as: that the Coins were backed by valuable assets including millions of dollars in gold, that the Coins were a functioning virtual currency that could be traded and exchanged for other currencies as well as for goods and services, and that the value of the Coins was based on trading of the Coins;

   b. Creating websites and social media accounts to broadcast misrepresentations about Coins and My Big Coin to investors and prospective investors;

   c. Soliciting investors and prospective investors directly, using email, text messages, and other methods;

   d. Directing investors to wire or send money to accounts controlled by CRATER, including accounts held by his family members, in order to "purchase" Coins;

   e. Distributing false information to investors regarding their accounts, including false "balances" of Coins in their accounts; and

   f. Misappropriating investor funds for personal use.

## Acts in Furtherance of the Scheme to Defraud

10. On or about various dates between 2014 and 2017, CRATER, together with Individuals 1 and 2, and others known and unknown to the Grand Jury, committed and caused to be committed the following acts, among others, in furtherance of the scheme to defraud:

3

11. On or about March 3, 2014, Individual 2 sent a potential investor an email falsely claiming that "Each coin is backed with gold! So, our currency and accounts are backed better than the FDIC backs your money in the bank!"

12. On or about March 6, 2014, Individual 1 used the Twitter account @MYBIGCOIN to tweet the false representation that "My Big Coin has Entered into a Contract where all My Big Coin's will be Backed by 100% Gold."

13. On or about January 28, 2015, CRATER sent an email to an investor falsely claiming "we have 300 million in gold backing us."

14. CRATER caused the My Big Coin website to publish the false claim that Coins were "a virtual currency backed by Gold Bullion."

15. CRATER, together with Individuals 1 and 2, and others known and unknown to the Grand Jury, misrepresented that Coins could be transferred and exchanged for goods and other currency. For example, CRATER caused the My Big Coin website to falsely claim that investors could "Shop in any store that accepts [Coins]; Transfer to anyone; and Trade [Coins] on an exchange market."

16. CRATER, together with Individuals 1 and 2, and others known and unknown to the Grand Jury, misrepresented that Coins were actively traded and had a value that fluctuated depending on trading in the Coins, including by causing the My Big Coin website to publish purported daily trading volumes and prices for Coins. For example:

   a. On or about August 16, 2014, the My Big Coin website falsely reported that Coins were trading at a price of $102.13;

   b. On or about August 1, 2015, the My Big Coin website falsely reported that Coins were trading at $389.86; and

  c. On or about October 14, 2015, Individual 2 emailed a potential investor telling her that "[t]he only place you can monitor the value of the coin is on the MBC page" and claiming that each Coin had a current value of $547.34.

17. As a further effort to mislead investors and continue the fraudulent scheme, CRATER, together with Individuals 1 and 2, and others known and unknown to the Grand Jury, marketed a "My Big Coin MasterCard" to investors and falsely promised that this card could be linked to Coins held in an investor's account and used to make purchases.

18. Rather than use these investor funds as represented, CRATER misappropriated over $6 million in victim funds for personal use.

19. For example, on or about July 9, 2014, CRATER spent approximately $60,611 at the Southampton Jewelry Exchange. On or about August 4, 2014, CRATER spent approximately $56,376 at the Southampton Jewelry Exchange. Over the course of the scheme, CRATER spent over $330,000 in investor funds at the Southampton Jewelry Exchange.

20. In addition, on or about August 25, 2014, CRATER spent approximately $98,994 at Lord and Guy, LLC, an auction house based in Southampton, New York. Among other items, CRATER purchased antique coins and jewelry, artwork, and decorative figures. On or about September 8, 2014, CRATER spent approximately $87,008 at Lord and Guy, LLC where he purchased, among other things, a rare stone. Over the course of the scheme, CRATER spent over $500,000 in investor funds at Lord and Guy, LLC.

## COUNTS ONE – FOUR
Wire Fraud
(18 U.S.C. § 1343)

The Grand Jury charges:

21. The Grand Jury re-alleges and incorporates by reference paragraphs 1-20 of this Indictment.

22. On or about the dates set forth below, in the District of Massachusetts and elsewhere, the defendant,

RANDALL CRATER,

having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of materially false and fraudulent pretenses, representations, and promises, did transmit and cause to be transmitted by means of wire communications in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing the scheme to defraud, as set forth below:

| Count | Approximate Date | Description |
|---|---|---|
| 1 | April 8, 2014 | Interstate wire transfer of $200,000 from victim within the District of Massachusetts to Wells Fargo account ending in -5976 and controlled by CRATER |
| 2 | May 1, 2014 | Interstate wire transfer of $250,000 from victim within the District of Massachusetts to Wells Fargo account ending in -5976 and controlled by CRATER |
| 3 | August 13, 2014 | Interstate wire transfer of $103,000 from victim within the District of Massachusetts to Wells Fargo account ending in -5976 and controlled by CRATER |
| 4 | January 28, 2015 | Interstate wire email from CRATER to victim within the District of Massachusetts regarding Coins being backed by gold |

All in violation of Title 18, United State Code, Section 1343.

## COUNTS FIVE – SEVEN
## Unlawful Monetary Transactions
## (18 U.S.C. § 1957)

The Grand Jury further charges:

23. The Grand Jury re-alleges and incorporates by reference paragraphs 1-20 of this Indictment.

24. On or about the dates set forth below, in the District of Massachusetts and elsewhere, the defendant,

### RANDALL CRATER,

knowingly engaged and attempted to engage in monetary transactions in criminally derived property of a value greater than $10,000, that is, the transfers of money set forth below, where such property was derived from specified unlawful activity, that is, wire fraud, in violation of Title 18, United States Code, Section 1343.

| Count | Approximate Date | Financial Transaction |
|---|---|---|
| 5 | May 2, 2014 | Wire transfer of $100,000 from Wells Fargo account ending in -5976 and controlled by CRATER to CRATER's Bank of America Account ending in -6356 |
| 6 | May 14, 2014 | Wire transfer of $150,000 from Wells Fargo account ending in -5976 and controlled by CRATER to CRATER's Bank of America Account ending in -6356 |
| 7 | June 2, 2014 | Wire transfer of $125,000 from Wells Fargo account ending in -5976 and controlled by CRATER to CRATER's Bank of America Account ending in -6356 |

All in violation of Title 18, United States Code, Section 1957.

## FORFEITURE ALLEGATION
## (18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c))

25. Upon conviction of one or more of the offenses in violation of Title 18, United States Code, Section 1343, set forth in Counts One through Four of this Indictment, the defendant,

## RANDALL CRATER,

shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the offenses.

26. If any of the property described in Paragraph 25, above, as being forfeitable pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), as a result of any act or omission of the defendant –

   a. cannot be located upon the exercise of due diligence;

   b. has been transferred or sold to, or deposited with, a third party;

   c. has been placed beyond the jurisdiction of the Court;

   d. has been substantially diminished in value; or

   e. has been commingled with other property which cannot be divided without difficulty;

it is the intention of the United States, pursuant to Title 28, United States Code, Section 2461(c), incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendant up to the value of the property described in Paragraph 25 above.

All pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c).

## MONEY LAUNDERING FORFEITURE ALLEGATION
(18 U.S.C. § 982(a)(1))

27.  Upon conviction of one or more of the offenses in violation of Title 18, United States Code, Section 1957, set forth in Counts Five through Seven of this Indictment, the defendant,

RANDALL CRATER,

shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(1), any property, real or personal, involved in such offenses, and any property traceable to such property.

28.  If any of the property described in Paragraph 27, above, as being forfeitable pursuant to Title 18, United States Code, Section 982(a)(1), as a result of any act or omission of the defendant

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the Court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be divided without difficulty;

it is the intention of the United States, pursuant to Title 18, United States Code, Section 982(b), incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendant up to the value of the property described in Paragraph 27 above.

All pursuant to Title 18, United States Code, Section 982(a)(1).

A TRUE BILL,

_____
FOREPERSON OF THE GRAND JURY
(Deputy)

                     ANDREW E. LELLING
                     United States Attorney

                     _____
                     JORDI DE LLANO
                     Assistant U.S. Attorney


                     ROBERT ZINK
                     Acting Chief
                     Criminal Division, Fraud Section
                     United States Department of Justice

                     _____
                     CAITLIN R. COTTINGHAM
                     Trial Attorney
                     Criminal Division, Fraud Section
                     United States Department of Justice

Dated: 2/26/2019

DISTRICT OF MASSACHUSETTS,
Returned into the District Court by the Grand Jurors and filed.

_____
Deputy Clerk
           1:55p.