

**U.S. Department of Justice**

*Andrew E. Lelling*
*United States Attorney*
*District of Massachusetts*

---

*Main Reception: (617) 748-3100*    *John Joseph Moakley United States Courthouse*
*1 Courthouse Way*
*Suite 9200*
*Boston, Massachusetts 02210*

December 16, 2019

<u>VIA EMAIL & FIRST CLASS MAIL</u>

| | |
|---|---|
| Ray E. Chandler | Geoffrey G. Nathan |
| Chandler & Jennings, LLC | Attorney at Law |
| 8 South Brooks Street | 132 Boylston Street |
| Post Office Box 10 | Boston, MA 02116 |
| Manning, SC 29102 | nathanlaw@earthlink.net |
| rchanatty6@aol.com | |

      Re:    United States v. Randall Crater, <u>Criminal No. 19-10063-DJC</u>

Dear Counsel:

      This letter is in response to Mr. Chandler's email dated December 12, 2019 (attached as Exhibit A), as well as other correspondence from counsel relating to discovery in this case. The government writes to address several misrepresentations and inaccuracies in this correspondence, several of which are repeated in Mr. Chandler's December 12, 2019 Motion to Continue.

      Beginning with the issue of "wallets," Mr. Chandler's December 12, 2019 letter states: "[a]fter reviewing the numerous wallets in discovery, we submitted evidence of a working wallet to you. I am advised that the wallet as those others that I have seen in the discovery including that of [Victim] shows that the holders of the wallets possessed the same number of coins in January of 2017 as they had in their possession in 2016 immediately before the fork was implemented. Having demonstrated that to you, please share with us your basis for not dismissing the indictment as we discussed."

      For context, according to public sources, a virtual or digital "wallet" is merely a device, physical medium, program or a service which can be used to store, receive, and track ownership of cryptocurrencies.[1] Unlike a physical wallet, a digital "wallet" does not hold actual cryptocurrency, rather it stores relevant information such as keys that are used to access cryptocurrency.[2] Much like a regular wallet or bank account only has value based on whether

---

[1] *See,* https://www.bankrate.com/glossary/c/cryptocurrency-wallet/
[2] *See* https://www.investopedia.com/terms/b/bitcoin-wallet.asp

1

there is valid, legal currency in the wallet/account, the mere existence of a digital wallet—even one linked to a particular cryptocurrency—does not suggest that the cryptocurrency has any actual value.

There are several inaccuracies in Mr. Chandler's claims relating to "wallets," which, in any event, are entirely irrelevant to the charged conduct. At the outset, as the government has repeatedly indicated, the fact that Mr. Crater or his associates may have developed or marketed digital wallets—even if true—is entirely irrelevant to the charges in the Indictment.

The Indictment alleges that Mr. Crater and his associates engaged in a scheme to defraud investors and prospective investors using misrepresentations about Coins and My Big Coin, including falsely claiming that Coins were backed by valuable assets including millions of dollars in gold, that Coins were a functioning virtual currency that could be traded and exchanged for other currencies as well as for goods and services, and that value of the Coins was based on trading. Indictment, ¶ 9. As the Indictment further alleges, Crater and his associates "[d]irect[ed] investors to wire or send money to accounts controlled by Crater, including accounts held by his family members, in order to "purchase" Coins," and thereafter "misappropriate[ed] investor funds for personal use. *Id.* Put simply, the existence of digital wallets well after the fraud scheme does not in any way negate the allegations in the Indictment that Mr. Crater lied about Coins in order to induce investors to purchase them.

The government has previously articulated this position to defense counsel on multiple occasions. Counsel raised the issue of "wallets" during a meeting in early October. At that time, counsel asked that the government search for and provide all "wallets" related to the alleged cryptocurrency My Big Coin. As the government indicated during that meeting, the government has fully complied with its discovery obligation and, to the extent we collected "wallets" during our investigation, they have been produced to you. Contrary to Mr. Chandler's claim in his October 25, 2019 email, the government has never indicated that it "d[id] not want to waste any time producing wallets." Rather, the government has produced the discoverable materials in its possession, custody, or control. The government is not under any obligation to attempt to procure additional materials that it believes are irrelevant to its investigation and the charged conduct, and therefore declined to do so.

In late October 2019, several weeks after demanding that the government obtain and produce these "wallets," Mr. Nathan provided several sets of documents, including what appeared to be screenshots and a 189-page table of various addresses and amounts, all without any explanation or context as to the source or nature of these documents, much less how they would possibly be admissible under the Federal Rules of Evidence. In your correspondence, you indicated that you were in possession of "working wallets." The following day, October 25, 2019, the government responded in writing to ask that you please produce these materials to the government in a format that allowed the government to review them to determine if they are, in fact, "working wallets," rather than what appeared to be incomplete and incomprehensible documents. In response, Mr. Chandler indicated that some of these materials related to a particular victim who you claim was "satisfied with MBC" and that the documents "hopefully demonstrate that there was a blockchain for MBC before 2017 and there were trades on it." With respect to the additional 189 pages of what purported to be "wallets," Mr. Chandler simply stated:

2

> I did not produce the additional 189 pages of wallets. Mr Nathan did that early this morning I can understand your consternation with the huge number of them. I am certain that Geoff meant to show that there were many many of the wallets just like the one held by [Victim].

To date, the government has not received any additional explanation or context for these additional documents.

In sum, the government has not received any information from the defendant that actually supports the defendant's position—made in the Defendant's Objection and Opposition in Response to the Government's Motion to Authorize Alternative Victim Notification Procedures Pursuant to 18 U.S.C. § 3771(d)(2)—that "My Big Coin was created as a valid crypto currency that can trade and has traded and had value until the day the CFTC filed its suit and raised the specter of fraud." As the allegations and charges in the Indictment make clear, the scheme took place between 2014 and 2017. The substantive counts and the majority of the specific allegations relate to conduct in 2014 and 2015. Even if the defendant's claims that in 2017 My Big Coin customers could access a digital wallet linked to My Big Coin were true (which is highly doubtful), this fact simply has no bearing on the allegation that Mr. Crater and his co-conspirators defrauded investors and potential investors by making misrepresentations about My Big Coins between 2014 and 2017. The documents you have provided and the claims you have made—again, even if true—do not provide any basis for dismissing the Indictment.

With respect to Mr. Chandler's additional request for "evidence that Mr. Crater intentionally misrepresented that there was gold backing," we have already pointed you to such statements, including those in the Indictment. Indictment, ¶ 13 ("On or about January 28, 2015, Crater sent an email to an investor falsely claiming 'we have 300 million in gold backing us.'").

Finally, as to Mr. Chandler's most recent request for interview reports and memoranda, as the government has previously stated on multiple occasions, the government has complied fully with its discovery obligations. The government has no obligation to produce interview memoranda at this time, and declines to do so.

Should you have particular questions about the discovery or encounter difficulty in identifying particular materials within the discovery, please do not hesitate to let us know.

Sincerely,

| | |
|---|---|
| ANDREW E. LELLING | ROBERT ZINK |
| United States Attorney | Chief, Fraud Section |
| By: ___/s/___ | ___/s/___ |
| Jordi de Llano | Caitlin R. Cottingham |
| Assistant United States Attorney | Assistant Chief |

## CERTIFICATE OF SERVICE

I, Caitlin R. Cottingham, certify that on December 16, 2019, the foregoing was served on all attorneys of record in the above captioned case, via the CM/ECF electronic filing system.

>By: _/s/ Caitlin R. Cottingham_
>Caitlin R. Cottingham
>Assistant Chief