UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                                              )
UNITED STATES OF AMERICA,            )
                                                              )
                                                              )
v.                                                            )        CRIMINAL NO.:  19-10063-DJC
                                                              )
RANDALL CRATER,                              )
            Defendant.                                )
_____)

## DEFENDANT'S MOTION TO COMPEL DISCOVERY

Defendant, Randall Crater, hereby moves for an order directing the government to produce all discovery requested in the April 28, 2021 discovery letter (hereinafter "Discovery Letter"), attached herein as Exhibit "A". This request is made pursuant to Federal Rule of Criminal Procedure 16 and Local Rule 116.3 of the United States District Court for the District of Massachusetts. The government, properly served, has failed to respond to Mr. Crater's request for disclosure of this additional information, and the information requested is critical to the preparation of Mr. Crater's defense. The additional information should be disclosed in accordance with the Federal Rules of Criminal Procedure and the Local Rules of the United States District Court for the District of Massachusetts. See Fed. R. Cr. P. 16(a)(1)(E); Local Rule 116.3(G).

## ARGUMENT

It is long established law that the government has a constitutional "duty to disclose evidence in its possession that is favorable to the accused and material to

1

guilt or punishment." United States v. Prochilo, 629 F.3d 264, 266 (1st Cir. 2011)

(citing Brady v. Maryland, 373 U.S. 83 (1963)). Additionally, the Federal Rules of

Criminal Procedure require that:

> [u]pon a defendant's request, the government must permit the defendant to inspect and to copy or photograph books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items, if the item is within the government's possession, custody, or control and:
>
> (i)   the item is material to preparing the defense;
>
> (ii)  the government intends to use the item in its case-in-chief at trial; or
>
> (iii) the item was obtained from or belongs to the defendant.

Fed. R. Crim. P. 16(a)(1)(E).

Because the additional information requested is material to and necessary for

the preparation of Mr. Crater's defense, whether or not the government intends to

use this information in its case-in chief at trial, the government is obligated to fulfill

its Brady obligations. Therefore, pursuant to Fed. R. Crim. P. 16(a)(1)(G), Mr. Crater

respectfully requests this Court to order the government to provide the discovery

listed in Exhibit "A".[1] See Hickman v. Taylor, 329 U.S. 495, 500, 507 (1947) (purpose

---

[1] Discovery in criminal cases is left to the trial court's discretion. See United States v. Lewis, 517 F.3d 20, 23 (1st Cir. 2008). The First Circuit has repeatedly indicated that the trial court's power with respect to discovery is quite broad. City of Waltham v. U.S. Postal Service, 11 F.3d 235, 243 (1st Cir. 1993), Santiago v. Fenton, 891 F.2d 373, 379 (1st Cir. 1989); Mack v. Great Atlantic & Pacific Tea Co., Inc., 871 F.2d 179, 186 (1st Cir. 1989) (appellate courts "will intervene in such matters only upon a clear showing of manifest injustice, that is, where the lower court's discovery order was plainly wrong and resulted in substantial prejudice to the aggrieved party"). This broad power is properly exercised by weighing discovery burdens against the likelihood of finding relevant material. Mack, 871 F.2d at 186-87.

of discovery rules is to permit "the parties to obtain the fullest possible knowledge of the issues and facts before trial"). See also United States v. Procter & Gamble Co., 356 U.S. 677, 682 (1958) ("Modern instruments of discovery serve a useful purpose . . . They together with pretrial procedures make a trial less a game of blindman's bluff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent. Only strong public policies weigh against disclosure.").

All federal rule 16 materials as well as local rule 116 materials were requested in the Discovery Letter, "including without limitation any and all Brady, Giglio, Agurs and Kyles materials." ¶ 29 Exhibit "A". Rule 16 is intended to minimize surprise that often results from unexpected testimony, reduce the need for continuances, and to provide the opponent with a fair defense. Everything spelled out in the Discovery Letter is necessary in order to defend Mr. Crater from the seven-count indictment, and could serve to prove his innocence. See United States v. Luthra, LEXIS 141387 at 29-31 (D. Mass. Oct. 12, 2016) (finding that both Brady and rule 16(a)(1)(E) entitled defendant to inspect and copy [certain] material in [defense discovery request] because defendant had made an adequate showing that this information was exculpatory under Brady and was "material to preparing [her] defense" under the rule).

<u>Breaking Down the Discovery Letter</u>

¶ 1 of the Discovery Letter requests all My Big Coin ("MBC") communications. These communications could provide exculpatory information regarding Mr. Crater because, at this point in time, he is being prosecuted as a conspirator of a fraudulent

enterprise. Releasing MBC company communications could show that, in fact, Mr. Crater did not conspire with anyone, and did not believe that the enterprise was fraudulent. For example, Counts 1-4 of the indictment allege wire fraud, alleging that Mr. Crater took part in a scheme and artifice to defraud "and for obtaining money and property by means of materially false and fraudulent pretenses, representations, and promises…" Without any and all of this MBC communication information, Mr. Crater cannot provide an adequate defense because, in simple terms, he cannot show, without the company's communications, that the pretenses, representations and promises were *not* false and *not* intended to defraud.

Additionally, without the MBC company communications, Mr. Crater can not prepare a defense to Counts 5-7 of the indictment. These remaining counts allege Unlawful Monetary Transactions, claiming that Mr. Crater "knowingly engaged and attempted to engage in monetary transactions in criminally derived property…" However, within the requested communications there is likely exculpatory information, such as proof that Mr. Crater was not doing anything that was knowingly criminal. Indeed, these communications will likely show that Mr. Crater believed that MBC was a legitimate enterprise. For the same reason, the defense put in its Discovery Letter a request for some discovery that was indeed provided but unable to be opened. These Bates stamps are supposed to depict the findings of the search warrant for greyshore@icloud.com, which is Mr. Crater's e-mail address. This information is both material and potentially exculpatory because, just like the MBC

4

company communications, these communications will likely show that Mr. Crater believed MBC to be a legitimate enterprise and did not conspire with anyone.

To prove that Mr. Crater believed MBC to be a legitimate enterprise and that he did not conspire to defraud anyone, the Discovery Letter requests in ¶ 3-9 and ¶ 11-15 should also be produced. Copies of all MBC records, such as agreements with government entities, the non-privileged documents kept by Attorneys John Lynch and Adam Tracy as they relate to this case, as well as John Roche's records and files pertaining to both MBC and Shot Spirits Corporation (with special attention to the "back room" information as it provides insight as to how the company actually functioned) are all included in these requests. With this information, Mr. Crater could likely show that MBC was, in fact, a legitimate enterprise before it was shut down by the government.  In other words, this information could completely exonerate Mr. Crater.

Indeed, copies of MBC company records, such as Safe Keeping Receipts for the gold, contracts related to the pre-paid cards, as well as interviews of related parties and bank records are included in these requests for the same purpose. If these records display any evidence of MBC functionality, actual acquisition of gold, or legitimate registration for any cards, it is material and exculpatory for Mr. Crater.

Moreover, because the indictment alleges criminal intent, without the requested additional information it will be difficult for Mr. Crater to prove his good-faith motives. See Luthra, supra at 32 (Finding that defendant has a right under Brady and rule 16(a)(1)(E) to the information that she sought in her discovery

request because it may yield evidence that refutes the government's evidence of her motive).

For the same reason, expert documentation, including their reports, affidavits, records and communications has been requested well in advance of trial because it may prove MBC's website functionality, blockchain functionality, and other exculpatory information that could assist in Mr. Crater's defense.[2] Plus, this information is material to Mr. Crater's defense because he will need time in advance of trial to test the conclusions of any government expert.[3]

Mr. Crater also detailed a request for a list of non-expert witnesses along with certain accompanying information in ¶ 20-26 of the Discovery Letter. The information requested includes promises/rewards/inducements, payments or special arrangements, copies of reports and interviews, as well as the criminal histories and credibility-related information regarding any potential witnesses in this case.[4] Due

---

[2] Expert information is also required to be produced pursuant to Rule 16, which "provides markedly broader discovery with respect to expert witnesses for the government than is required for other types of information from the government. Rule 16 provides that the defense is entitled to discovery of a written summary of expert testimony that the government intends to use in its case- in-chief." United States v. Dukagjini 326 F.3d 45, 56 (2nd Cir. 2002).

[3] To date, Mr. Crater has been provided some expert information.  However, based on a review of the expert information received, it is likely that the prosecution will offer additional expert testimony during its case-in-chief.  Defendant submits that it is for these additional expert witnesses that the government should comply with Fed. R. Crim. P. 16(a)(1)(G), which requires more than just Jencks material.  As the Court knows, the government must provide a written summary of any testimony that the government intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence during its case-in-chief at trial.

[4] See Alford v. United States, 282 U.S. 687, 693 (1931) (prior criminal conduct is relevant where the witness may have been promised or believed that his cooperation would lead to immunity); Devose v. Norris, 867 F. Supp. 836, 849 (E.D. Ark. 1994) (conviction

to the sheer amount of people involved, Mr. Crater needs all of this information well in advance of trial in order to adequately prepare for trial.[5]

For the same reason, Mr. Crater requested information regarding unindicted co-conspirators and other state and federal law enforcement investigations (CFTC, FINRA, SEC) in his Discovery Letter. See United States v. Castro, 502 F. Supp. 2d 218, 225 (D.P.R. 2007) ("Evidence 'within [the government's] possession' includes exculpatory information in the possession of any agency that participated in the investigation of the crime charged.") (quoting Kyles v. Whitley, 514 U.S. 419, 438 (1995). If this information shows that Mr. Crater was not in a decision-making position, as the prosecution has alleged, this information will be exculpatory.

Lastly, Mr. Crater requested in ¶ 28 of the discovery letter "all evidence tending to undercut in any way the credibility of the government's evidence or of the

---

reversed where government failed to disclose prior disciplinary action against witness for theft and making false statements to supervisor and prosecuting attorney while employed as a police officer). See also Kyles, Brady and Giglio; United States v. Drougas, 748 F.2d 8, 23 (1st Cir. 1984) ("[e]vidence relating to the impeachment of prosecution witnesses and immunity or other preferential treatment ... is deemed to be exculpatory within the meaning of the Brady rule"); United States v. Owens, 933 F. Supp. 76, 87 (D. Mass 1996) ("The government has to reveal all promises, rewards and inducements to include the quid for the quo. And if the quid pro quo involves other sovereigns, of course that must be revealed"); United States v. Snell, 899 F. Supp. 17, 22 (D. Mass 1995) ("[P]romises, rewards and inducements -- is both classic Brady and is specifically mentioned in the Local Rules"); United States v. Partin, 493 F.2d 750, 757-60 (5th Cir. 1974) (proper impeachment to question a witness about the dropping of charges against or other preferential treatment given to his family).

[5] While the government may sometimes be able to "withhold from disclosure the identity of persons who furnish information of violations of law to officers," this privilege must "give way" "[where the disclosure of an informer's identity, or the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause." Roviaro v.United States, 353 U.S. 53, 60-61 (1957); see also United States v. Cartagena 593 F.3d 104, 112-13 (1st Cir. 2010) (quoting Roviaro).

allegations in the indictment." This verbiage in and of itself shows why this information would be exculpatory. Similarly, ¶ 2 and ¶ 27 of the Discovery Letter request information regarding the lead case agent as well as disciplinary records and histories of law-enforcement agents participating in this investigation and trial. Obtaining this information well in advance of trial will allow Mr. Crater to prepare for trial.

In sum, the additional discovery that Mr. Crater seeks is both exculpatory and material to his defense, and he asks this Court to order its disclosure. The government has not stated any reasons for declining to disclose this information; in fact, the government has not replied to the request in any way.[6] "In a line of cases beginning with Brady, the Supreme Court has made clear that the prosecution in a criminal case has an affirmative duty to disclose information in its possession that is favorable to the defendant and material to the question of guilt or punishment." United States v. Tsarnaev, LEXIS 168847 at 1 (D. Mass. Nov. 27, 2013) (citing Kyles, 514 U.S. at 432-33). See also United States v. Prochilo, 629 F.3d 264, 268 (1st Cir. 2011). "Evidence is 'material' for these purposes only if there is a reasonable probability that it could affect the outcome of the trial." Tsarnaev, LEXIS 168847, at 1 (citing United States v. Bagley, 473 U.S. 667, 682 (1985)). Clearly, the discovery

---

[6] See Fed. R. Civ. P. Rule 26 Advisory Committee's Notes, 1993 Amendments ("the spirit of the rules is violated when advocates attempt to use discovery tools as tactical weapons rather than to expose the facts and illuminate the issues by . . . unnecessary use of defensive weapons or evasive responses. All of this results in excessively costly and time-consuming activities that are disproportionate to the nature of the case, the amounts involved, or the issues or values at stake."). See also Saint-Gobain Performance Plastics Corp. v. Advanced Flexible Composites, Inc., LEXIS 107937, at 31 n.5 (D. Mass. Oct. 17, 2006).

requested could affect the outcome of the trial.[7]   The government's obligation to provide <u>Brady</u> material to the defendant is also ongoing. <u>Id.</u>

Finally, the government is obligated to respond to each discovery request because, as the Supreme Court made clear in <u>Agurs</u>:

> if the subject matter of such a request is material, or indeed if a substantial basis for claiming materiality exists, it is reasonable to require the prosecutor to respond either by furnishing the information or by submitting the problem to the trial judge. When the prosecutor receives a specific and relevant request, the failure to make any response is seldom, if ever, excusable.

427 U.S. at 106 (emphasis supplied).   If this information is not provided until shortly before trial, Mr. Crater's ability to adequately defend himself will be severely compromised.

<u>CONCLUSION</u>

Mr. Crater is entitled to the above requested discovery under Fed. R. Crim. P. Rule 16 and Local Rule 116 of the United States District Court for the District of Massachusetts because he is entitled to adequately prepare his defense, investigate the allegations against him and present the Court and the jury with a full and fair representation of all the facts in this case.   Accordingly, Mr. Crater respectfully requests the Court to order the government to produce this additional information to the extent that it is within government's possession and control so Mr. Crater will have a full and fair opportunity to defend himself against the allegations in the indictment.

---

[7] "Generally speaking, [this so-called] <u>Brady</u> material falls into one of two categories — that which tends to be more or less directly exculpatory in that it casts doubt on the defendant's guilt, and that which is indirectly exculpatory in that it tends to impeach the reliability of other prosecution evidence." <u>Id.</u>

Respectfully submitted,

For Randall Crater
By his attorneys
LAWSON & WEITZEN, LLP


  /s/  Scott P. Lopez
Scott P. Lopez, BBO # 549556
Lawson & Weitzen, LLP
88 Black Falcon Ave., Suite 345
Boston, MA  02210
(617) 439-4990 (tel)
(617) 439-3987 (fax)
splopez@lawson-weitzen.com

Dated:  May 28, 2021


## CERTIFICATE PURSUANT TO LOCAL RULE 7.1

The undersigned counsel for Randal Crater hereby certifies that he conferred by telephone with Deputy Chief Jordi de Llano on May 27, 2021, in a good faith attempt to resolve or narrow the issues raised in this motion and that, upon consultation, the government informed me that the reason for the delayed response to the discovery letter was not due to objections to the requests but due to personnel changes that impacted the staffing of the case and that the government expects to be able to provide at least a partial response to the requests by next week.

  /s/ Scott P. Lopez
Scott P. Lopez


## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on May 28, 2021.

  /s/ Scott P. Lopez
Scott P. Lopez