IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 19-cr-10063-DJC |
| | ) | |
| RANDALL CRATER, | ) | |
| | ) | |
| Defendant | ) | |

## GOVERNMENT'S TRIAL BRIEF AND
## OMNIBUS RESPONSE TO DEFENDANT'S MOTIONS IN LIMINE

The government submits this Trial Brief and Omnibus Response to Defendant's Motions in Limine in anticipation of the trial scheduled to begin on July 11, 2022.

Section I contains a brief factual and procedural background of the case. Section II contains the government's responses to the defendant's motions in limine (Dkt. Nos. 128, 130, 132-140). Section III highlights several additional evidentiary issues that the government anticipates may arise at trial and requests conditional rulings from the Court with respect to each issue.

Additionally, the government has attached to this filing the following exhibits:

- <u>Exhibit A</u> – Stipulations agreed to by the parties in a form suitable for presentation to the jury;

- <u>Exhibit B</u> – List of prospective government witnesses;

- <u>Exhibit C</u> – List of government exhibits to be introduced at trial[1];

- <u>Exhibit D</u> – Proposed voir dire;

---

[1] The government will work with counsel for the defendant to determine which exhibits are contested and uncontested. Per the Court's instructions, the parties will then mark the uncontested exhibits with numbers and provide a copy to the Court. The contested exhibits will be marked with letters, and the parties will provide the Court a list of the contested exhibits that identifies the party objecting, the basis, and the response to that objection.

- <u>Exhibit E</u> – Proposed jury instructions[2]; and

- <u>Exhibit F</u> – Expert report of Ms. Pamela Clegg, the Vice President of Financial Investigations at CipherTrace, Inc.

For the convenience of the Court, the government is providing all of these materials in a single filing.  The government will also file them separately on the docket at the Court's request.

## I.   CASE BACKGROUND

On January 18, 2022, the grand jury returned an eight-count Superseding Indictment charging Randall Crater ("the defendant") with wire fraud (counts one through four; 18 U.S.C. § 1343), unlawful monetary transactions (counts five through seven; 18 U.S.C. § 1957), and operating an unlicensed money transmitting business (count eight; 18 U.S.C. § 1960(a) and (b)(1)(B)).  The Superseding Indictment alleges that the defendant was the principal operator of My Big Coin Pay, Inc. ("My Big Coin"), a purported virtual currency company that sold My Big Coin virtual currency ("Coins" or "MBC").   The basic premise of the scheme was to use misrepresentations to solicit potential investors in My Big Coin and purchasers of MBC.  This occurred from approximately 2014 through at least 2017, and the misrepresentations were made through the My Big Coin website, social media, email, and direct meetings.    These misrepresentations included, for example, that MBC was a cryptocurrency (*i.e.*, a virtual currency that utilized cryptography and blockchain technology), was backed by gold reserves, had a partnership with Mastercard, and could be bought, sold, or traded on any identifiable market. These misrepresentations were made and caused to be made by the defendant in verbal statements,

---

[2] A "Word.doc" version will also be provided to the Court and counsel for the defendant via email.

emails, and on his social media, as well as on the My Big Coin website and various social media platforms.

Individuals from Massachusetts and elsewhere invested in My Big Coin and purchased MBC.  The purchasers were in many instances directed to the My Big Coin Exchange, which purported to reflect the current trading volumes and prices of MBC.  The My Big Coin Exchange, however, was not registered as a currency exchange with the U.S. Treasury.  Both the investors and purchasers were, in many instances, directed to wire funds to bank accounts controlled by the defendant, including to at least one account opened in the name of the defendant's sister.  The funds were thereafter transferred to one or more other accounts controlled by the defendant and used primarily for the defendant's personal expenses.

Defendant misappropriated investor funds and used the funds for his own personal gain, including to purchase homes, lavish vacations, and other luxury goods.  My Big Coin never participated in an IPO or went public and the fraudulent "shares" had no actual value.  As a result of the scheme, investors were left holding Coins and/or shares that had no actual value and could not be transferred, exchanged, or used for any legitimate purpose.  Over the course of the scheme, at least 40 individuals were defrauded out of at least $6 million.

## II.     OMNIBUS RESPONSE TO DEFENDANT'S MOTIONS IN LIMINE

### A. Government's Response to Defendant's Motion in Limine to Require the Government to Present a Proffer of Proof on Co-Conspirator Declarations and Conspiracy [Dkt. No. 128]

"Under Rule 801(d)(2)(E), an out-of-court statement made by a party's co-conspirator during and in furtherance of the conspiracy does not constitute inadmissible hearsay, even when admitted for its truth."  *United States v. Pena*, 24 F.4th 46, 61 (1st Cir. 2022) (*citing United States v. Petrozziello*, 548 F.2d 20, 23 (1st Cir. 1977) and Fed. R. Evid. 801(d)(2)(E)).   Under

*Petrozziello*, the Court must determine whether, "(1) when the statement was made, the declarant was a member of a conspiracy, (2) the defendant was also (or later became) a member of the same conspiracy, and (3) the statement was made in furtherance of that conspiracy."  *United States v. Weadick*, 15 F.4th 1, 8 (1st Cir. 2021) (citing *United States v. Saccoccia*, 58 F.3d 754, 778-79 (1st Cir. 1995)); *accord Pena*, 24 F.4th at 61.  A *Petrozziello* finding is made under a "preponderance of the evidence" or "more likely than not" standard, *Petrozziello*, 548 F.2d at 23, after consideration of the totality of the evidence, *United States v. Mitchell*, 596 F.3d 18, 23 (1st Cir. 2010).

The Court must make that *Petrozziello* inquiry at the close of all evidence.  *See, e.g.*, *United States v. Ciampaglia*, 628 F.2d 632, 638 (1st Cir. 1980) (holding that the *Petrozziello* finding is to be made "at the close of all the evidence" and noting that "requiring trial courts to delay *Petrozziello* rulings until the conclusion of all the evidence would not create any significant additional demands or difficulties"); *accord United States v. Mangual-Garcia*, 505 F.3d 1, 8 (1st Cir. 2007) ("[T]his circuit requires the court to delay its final *Petrozziello* determination until the close of all evidence.").  Thus, to the extent the defense objects to the admissibility of co-conspirator statements offered under Fed. R. Evid. 801(d)(2)(E), the Court may nevertheless conditionally admit them and, at the close of all the evidence, make a final determination out of the hearing of the jury.  *Ciampaglia*, 628 F.2d at 638.

Accordingly, a pretrial *Petrozziello* ruling is inappropriate.  Any such ruling is also unnecessary because the defendant has failed to identify any specific statements the admission of which would depend on a finding under *Petrozziello*.  Nevertheless, in an effort to provide the Court additional context, the government below provides additional background of the co-conspirators and examples of their statements that the government anticipates introducing at trial.

Most, if not all, of these statements are admissible regardless of any later *Petrozziello* ruling because they are either the defendant's own statements and/or not offered for the truth of the matter asserted.[3]

### 1. Identity of Conspirators and Summary of Anticipated Proof of *Petrozziello* Factors

The government has alleged the existence of a scheme involving the defendant as well as "Individuals 1 and 2" and "others."  Superseding Indictment ¶ 8.  The government provides the following summary proffer of anticipated evidence as to those individuals.

#### a.  Defendant

Defendant is the creator and founder of My Big Coin, Inc. and related entities. Defendant held himself out as the main face of My Big Coin, drafted My Big Coin promotional materials and social media, and received the vast majority of the proceeds of the scheme.  Defendant defrauded investors by using false representations to sell MBC and shares in My Big Coin.  He also marketed MBC to investor-victims, telling potential investors that MBC was a viable cryptocurrency backed by gold, oil and mineral reserves, other cryptocurrencies, and other assets.  Investors were also told that MBC could be exchanged and traded for cash or other cryptocurrencies.

#### b.  Individual 1

Individual 1 was a resident of California who served as Chief Executive Officer of My Big Coin.  Most investors were introduced to the scheme by Individual 1 and others, who marketed

---

[3] For example, individuals providing wiring information is being offered as proof of the act itself, not proof that the wiring information was accurate.  As another example, the social media postings are not hearsay because they are being offered to show that the statements were made, not to prove the truth of the assertions in the social media posts.  *See* Fed. R. Evid. 801(c), Advisory Committee's Note ("If the significance of an offered statement lies solely in the fact that it was made, no issue is raised as to the truth of anything asserted, and the statement is not hearsay.").

Coins to potential investors, using in-person meetings, social media, and e-mail.  When a person wanted to invest in Coins, they would be given instructions for sending or wiring money for the investment by Individual 1 and others.  Once the investor wired the funds, Individual 1 would email My Big Coin's "support" with the total investment, "price" of coins, and number of coins purchased.  Thus, while investors were told they could track their Coin purchases and the fluctuating value of Coins, in reality, defendant and his co-conspirators manually tracked Coin "purchases" and information about funds from investors.  In addition, investors were told that the price of Coins fluctuated based on trading in Coins and were directed to the daily trading price on the My Big Coin website.  However, this "price" was, like the user accounts, manually set by defendant and his co-conspirators.  Admissible co-conspirator statements by Individual 1 include the following:

| Date | Bates | Description |
|---|---|---|
| 3/3/2014 | TLF-0000000261 | Email from Individual 1 to potential investor: "Each coin is backed with gold! So, our currency and accounts are backed better than the FDIC backs your money in the bank!" |
| 4/7/2014 | TLF-0000000235 | Email from Individual 1 to investor with Wiring Information |
| 8/6/2014 | DOJ-GOOG-0000077344 | Email from Individual 1 to co-conspirator confirming that he will send Lynch the USA wire info |
| 8/6/2014 | CFTC_JML_001238 | Email from Individual 1 to investor with Wells Fargo Greyshore information |
| 12/10/2015 | DOJ-0000410144 | Email from Individual 1 to investor: "calculus for 'current value' I believe is up to 'us' and not 100% math algoyhythm" |

### c.  Individual 2

Individual 2 was a resident of Michigan who promoted My Big Coin and solicited potential investors.  Defendant and Individual 2 were the primary authors of the false and fraudulent

marketing materials and had some direct contact with investors.   One of the government's witnesses, Marcus Gorby, is expected to testify that Facebook accounts for My Big Coin Auctions, My Big Coin Exchange, and My Big Coin Pay were all registered to him.   Additionally, Gorby will testify that Individual 2 and defendant caused Gorby to draft the information that was posted to the various My Big Coin Facebook sites.

Examples of admissible statements caused to be made by defendant and Individual 2 include the following:

| Date | Bates | Description |
|---|---|---|
| 1/23/2014 | DOJ-CFTC-000000001 | @MyBigCoin Facebook page stating that "Today current value is $ 23.64" |
| 1/25/2014 | DOJ-CFTC-000000001 | @MyBigCoin Facebook page stating that "Today current value is $ 23.87" |
| 1/27/2014 | DOJ-CFTC-000000001 | @MyBigCoin Facebook page stating that "Today current value is $ 23.87" |
| 1/28/2014 | DOJ-CFTC-000000001 | @MyBigCoin Facebook page stating that "Today current value is $ 28.87" |
| 1/31/2014 | DOJ-CFTC-000000001 | @MyBigCoin Facebook page stating that "My Big Coin was launched so anyone with an email account can send or receive #MyBigCoin (MBC). Current $28.87 USD" |
| 2/4/2014 | DOJ-CFTC-000000001 | @MyBigCoin Facebook page stating that "Today #MyBigCoin (MBC). Current Value $31.02 USD" |
| 2/8/2014 | DOJ-CFTC-000000001 | @MyBigCoin Facebook page stating that "Today #MyBigCoin (MBC). Current Value $32.26 USD" |
| 2/15/2014 | DOJ-CFTC-000000001 | @MyBigCoin Facebook page stating that "Today #MyBigCoin (MBC). Current Value $33.61 USD" |
| 2/21/2014 | DOJ-CFTC-000000001 | @MyBigCoin Facebook page stating that "Today #MyBigCoin (MBC). Current Value $38.66 USD" |
| 2/27/2014 | DOJ-CFTC-000000001 | @MyBigCoin Facebook page stating that "Today #MyBigCoin (MBC). Current Value $41.39 USD" |
| 2/28/2014 | DOJ-CFTC-000000001 | @MyBigCoin Facebook page stating that "Today #MyBigCoin (MBC). Current Value $47.56 USD" |

| 2/28/2014 | DOJ-CFTC-000000001 | @MyBigCoin Facebook page stating that "Major announcements coming out of My Big Coin in the next 24 hours please stay tuned…" |
|---|---|---|
| 3/6/2014 | DOJ-CFTC-000000001 | @MyBigCoin Facebook page stating that "The Wait is Over!!! Officially... My Big Coin has Entered into a Contract where all My Big Coin's will be Backed 100% by Gold." |
| 3/6/2014 | DOJ-CFTC-000000001 | @MyBigCoin Facebook page stating that "Today #MyBigCoin (MBC). Current Value $52.88 USD" |
| 3/15/2014 | DOJ-CFTC-000000001 | @MyBigCoin Facebook page stating that "Today #MyBigCoin (MBC). Current Value $57.99 USD" |
| 3/22/2014 | DOJ-CFTC-000000001 | @MyBigCoin Facebook page stating that "Today #MyBigCoin (MBC). Current Value $65.89 USD" |
| 3/31/2014 | DOJ-CFTC-000000001 | @MyBigCoin Facebook page stating that "Today #MyBigCoin (MBC). Current Value $70.89 USD" |
| 4/10/2014 | DOJ-CFTC-000000001 | @MyBigCoin Facebook page stating that "Today #MyBigCoin (MBC). Current Value $73.89 USD" |
| 4/19/2014 | DOJ-CFTC-000000001 | @MyBigCoin Facebook page stating that "Today #MyBigCoin (MBC). Current Value $76.57 USD" |
| 5/2/2014 | DOJ-CFTC-000000001 | @MyBigCoin Facebook page stating that "Today #MyBigCoin (MBC). Current Value $91.32 USD" |
| 5/21/2014 | DOJ-CFTC-000000001 | @MyBigCoin Facebook page stating that "Today #MyBigCoin (MBC). Current Value $102.13 USD" |
| 9/7/2014 | DOJ-CFTC-000000001 | @MyBigCoin Facebook page stating that "Today #MyBigCoin (MBC). Current Value $111.66 USD" |
| 11/8/2014 | DOJ-CFTC-000000001 | @MyBigCoin Facebook page stating that "Today #MyBigCoin (MBC). Current Value $121.38 USD" |
| 9/23/2015 | FINRA-0000000070 | The My Big Coin website stating: "Shop in any store that accepts [Coins]; Transfer to anyone; and Trade [Coins] on an exchange market." |
| 10/5/2015 | WebCap-0000000084 | John Roche commented on the @MyBigCoin Facebook page stating that "My big coin 500 dollars last buy today" |

In light of the applicable caselaw and the foregoing proffer, the Court should provisionally admit the co-conspirator statements of Individuals 1 and 2.

**B. The Court Should Admit the Expert Testimony of Pamela A. Clegg and Deny the Defendant's Motion in Limine to Preclude the Testimony of Paemla A. Clegg or, in the Alternative, for a Daubert Hearing [Dkt. No. 130]**

The government has identified and disclosed to the defense an expert witness: Pamela Clegg, the Vice President of Financial Investigations at CipherTrace, Inc. The government intends to offer Ms. Clegg's testimony in the government's case-in-chief. The government provided counsel for the defendant with expert reports[4] which contain Ms. Clegg's background information and a summary of her anticipated testimony.

Under Rule 702, an expert may testify if his or her "scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. The party that proffers expert testimony bears the burden of showing that it is admissible. *See Bourjaily v. United States*, 483 U.S. 171, 175-76 (1987). The trial court must also find that the proposed testimony is both relevant and reliable prior to admitting it into evidence. *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589-90 (1993); *see Kumho Tire Co., Inc. v. Carmichael*, 526 U.S. 137, 141 (1999). Specifically, the trial judge has "the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert*, 509 U.S. at 597.

Rules 401, 402, and 403 likewise provide that relevant evidence is admissible when it tends to make the existence of any fact that is of consequence more or less probable than it would be

---

[4] For the Court's consideration and convenience, the government has included a copy of Ms. Clegg's most recent expert report in this case in Exhibit F.

without the evidence, but may be excluded if its probative value is substantially outweighed by, among other things, the danger of unfair prejudice, confusion of the issues, and misleading the jury.

Here, Ms. Clegg is well-qualified to provide relevant expert testimony.  She is a leading expert on cryptocurrency investigations and has previously testified in other cases.  Ms. Clegg has more than 15 years of diplomatic and private sector experience working on cutting-edge national security issues, including money laundering and fraud investigations relating to counterterrorism, counternarcotics, security, and nation building.  Ms. Clegg is a Certified Anti-Money Laundering Specialist (CAMS).  She has created and authored multiple cryptocurrency training courses and taught thousands of students around the world in the area of cryptocurrency investigations and compliance. Ms. Clegg has conducted trainings and given presentations internationally on cryptocurrency and financial crimes, including to Interpol, Europol, Department of Treasury, Department of Homeland Security and Department of Justice. She created and implemented certification courses that are attended by public and private sector investigators, compliance officers, and managers.  The defendant's attacks on Ms. Clegg's purported lack of qualifications (and claims about her arguable bias/credibility) may be topics appropriate for cross-examination. If anything, these claims would go to the weight of her testimony, but not its admissibility.

Ms. Clegg's testimony will be relevant to the facts and issue because it will help the jury understand virtual currency and cryptocurrency generally.  Fed. R. Evid. 702(a) (permitting the use of expert testimony where the expert's "specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue").  Like other specialized technologies, the workings of cryptocurrency (*e.g.*, how it utilizes cryptography and blockchain technology) is not widely understand to the lay person, such that expert testimony is useful.  *See, e.g., United States*

*v. Saini*, 23 F.4th 1155 (9th Cir. 2022) (expert testimony permitted regarding the "dark web" and obtaining personal information on the "dark web"); *United States v. Chiaradio*, 684 F.3d 265, 278 (1st Cir. 2012) (expert testimony permitted on "EP2P" and the manual re-creation of "EP2P" sessions).

Ms. Clegg's testimony that is specific to MBC is also highly probative, as she will describe how she conducted her investigation into MBC and her findings. Ms. Clegg is expected to testify that she conducted an analysis of MBC's blockchain, of exchanges that listed MBC, and reviewed public statements made by MBC social media accounts and individuals associated with MBC. Based on the blockchain analysis, Ms. Clegg is expected to testify that MBC was not available as a cryptocurrency from 2014 through June 27, 2017. On June 28, 2017, the genesis block[5] of MBC was created and MBC became available as a cryptocurrency. Ms. Clegg is also expected to testify that even after MBC was created on June 28, 2017, her analysis revealed multiple abnormalities that are indicative of fraud. For example, MBC trading was indicative of wash trading, in which two accounts quickly trade back and forth to make it appear that there is an active market for the cryptocurrency. Additional abnormalities include MBC's lack of a variety of users, lack of a publicly available code, and lack of a publicly available white paper.

Based on Ms. Clegg's testimony a reasonable fact finder may conclude that the defendant sold a non-existent cryptocurrency from 2014 through 2017 and then engaged in fraudulent trading to make it appear that there was a market for the cryptocurrency. Ms. Clegg's testimony is highly

---

[5] As Ms. Clegg explains in her expert report, and as she will explain to the jury at trial: "Cryptocurrency is a type of virtual currency that utilizes cryptography to validate and secure transactions that are digitally recorded on a distributed ledger, such as a blockchain. The first block on the blockchain is referred to as the 'genesis block.' This is the beginning of that cryptocurrency." Exhibit F at 5.

probative because it goes directly to the manner and means the defendant used to execute the scheme.

Lastly, a *Daubert* hearing is not necessary here because the issues raised by the defendant are cross-examination topics and would only speak to weight not admissibility. *Echevarria v. Caribbean Aviation Maint. Corp.*, 841 F. Supp. 2d 565, 569 (D.P.R. 2012); *see also United States v. Diaz*, 300 F.3d 66, 76-77 (1st Cir. 2002); *Daubert*, 509 U.S. at 596 (noting that "vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence"). Even where expert testimony was arguably "speculative" it does "not need to be excluded as long as the opposing counsel has an opportunity for cross-examination in order to expose any weaknesses in the underpinnings of the expert testimony." *Carrelo v. Advanced Neuromodulation Sys., Inc.*, 777 F. Supp. 2d 315, 319 (D.P.R. 2011) (*citing United States v. Vargas*, 471 F.3d 255, 264 (1st Cir. 2006)). As such, the defendant's motion should be denied and the Court should admit Ms. Clegg's testimony.

### C. The Court Should Admit Defendant's Admissions in the CFTC lawsuit and Deny the Defendant's Motion in Limine to Exclude Admission of Civil Proceedings [Dkt. No. 132]

The defendant's motion to preclude admission of the defendant's highly probative admissions in his parallel civil case should be denied. On January 16, 2018, the CFTC filed a lawsuit in the District of Massachusetts naming as defendants My Big Coin Pay, Inc. and related entities and individuals, including the defendant. *See* 18-cv-10077-RWZ, ECF No. 1 (Complaint). On April 20, 2018, the CFTC filed an Amended Complaint. 18-cv-10077-RWZ, ECF No. 63. The Amended Complaint alleged that the defendant and others made false and misleading statements about a purported virtual currency ("My Big Coin") and in doing so "obtained more than

approximately $6 million from at least twenty-eight customers . . . through fraudulent solicitations." *Id.* ¶ 1. The defendant responded to the Complaint on November 9, 2018. 18-cv-10077-RWZ, ECF No. 113 ("Defendant Randall Crater's Answer to the Amended Complaint"). The Answer, in which the defendant refers to himself as "Defendant", included several substantive admissions that are relevant to and admissible in his criminal case, including:

- "Defendant owned My Big Coin ("MBC") coins and sold some of his MBC coins to individuals who paid Defendant by transmitting funds to his designated payees. . . ." *Id.* ¶ 6.

- "Defendant admits My Big Coin, Inc. is or was a Nevada corporation, and admits it has never registered with the Commodity Futures Trading Commission ("CFTC")." *Id.* ¶ 14.

- "Defendant admits" that "Barbara Crater Meeks is a resident of Elkin, North Carolina. She is Randall Crater's mother." *Id.* ¶ 21.

- "Defendant admits Erica Crater is his wife . . . ." *Id.* ¶ 22.

-  "Defendant admits Greyshore is an LLC and Defendant is the managing member and CEO, admits the LLC has never been registered with the CFTC . . . ." *Id.* ¶ 23.

- "Defendant admits that he had a Greyshore Tech[nology] Linkedin profile. . . ." *Id.* ¶ 46.

- "Defendant admits to texting one or more owners of digital currency in the name of MyBigCoin . . . ." *Id.* ¶ 56.

- "Defendant . . . admits Defendant owned My Big Coin coins and sold some of his My Big Coins to individuals over the course of 2014 through 2017." *Id.* ¶ 60.

- "Defendant admits that he owned My Big Coin digital currency coins and sold some of his MBC coins to individuals who paid Defendant by transmitting funds to his designated payees . . . ." *Id.* ¶ 62.

- "Defendant admits purchasers of digital currency that he owned paid for their purchases and sent their payments to accounts", including accounts in the names of "Greyshore Advertisement, Greyshore LLC, Greyshore Technology, Barbara Crater Meeks, and Defendant Gillespie." *Id.*  ¶ 63 (incorporating by reference accounts listed in Amended Complaint ¶ 63).

- "Defendant admits that he spent money he earned from sales of digital currency he owned. Defendant further admits he caused funds from his sale of digital currency he owned to be moved from one bank to another . . . ." *Id.* ¶ 65.

Federal Rule of Evidence 801(d)(2) provides, in relevant part, that a statement is not hearsay if "[t]he statement is offered against an opposing party and: (A) was made by the party in an individual or representative capacity; [or] (B) is one the party manifested that it adopted or believed to be true."  Statements made by an attorney concerning a matter within his employment may be admissible against the party retaining the attorney.  *United States v. McKeon*, 738 F.2d 26 (2d Cir. 1984); *Williams v. Union Carbide Corp.*, 790 F.2d 552, 555-56 (6th Cir. 1986) ("It is the general rule that statements made by an attorney concerning a matter within his employment may be admissible against the party retaining the attorney."); *United States v. Cook*, Case No. 16-50, 2018 U.S. Dist. LEXIS 209029, at *23 (D. Del. Dec. 11, 2018) ("[The Court] finds that the statements of Defendant's prior counsel at the July 2013 meeting are admissions by an authorized agent of a party opponent and not hearsay under Rule 801(d)(2)(C) and (D).").

Therefore, statement by a lawyer authorized to represent a defendant before a court are attributable to the defendant and admissible against him.  *United States v. Pina-Nieves*, No. 20-258 (FAB), 2021 U.S. Dist. LEXIS 252269, at *9 (D.P.R. Dec. 12, 2021); *United States v. Lombard*, 72 F.3d 170, 189 (1st Cir. 1995) (explaining that an "attorney's statements may be imputed to and admitted against his client as a principal under Fed.R.Evid. 801(d)(2)(D)" absent some other reason to exclude the statements); *accord United States v. Amato*, 356 F.3d 216, 220 (2d Cir. 2004); *see also* 2 McCormick On Evid. § 257 (7th ed. 2013) ("The dominant position . . . is that pleadings shown to have been prepared or filed by counsel employed by the party are prima facie regarded as authorized by the client and are entitled to be received as admissions."); 4 Weinstein's Evidence 801-221 ("Once agency, and the making of the statement while the relationship continues are established, the statement is exempt from  the hearsay rule so long as it relates to a matter within the scope of the agency."); *Laird v. Air Carrier Engine Serv., Inc.*, 263

14

F.2d 948, 953 (5th Cir. 1959) ("An attorney has wide authority in the conduct of litigation. He is chosen to speak for the client in Court. When he speaks in Court, whether it be on a formal trial or in an informal pretrial, he speaks for and as the client.").  Accordingly, relevant admissions in the Answer that was signed on the defendant's behalf by and through his attorneys are admissible non-hearsay.

Additionally, beyond meeting the threshold of admissibility, the CFTC lawsuit and the Answer are all "susceptible to judicial notice."  *Rodi v. S. New England Sch. Of L.*, 389 F.3d 5, 18–19 (1st Cir. 2004) (citing Fed. R. Evid. 201); *see also Kowalski v. Gagne,* 914 F.2d 299, 305 (1st Cir.1990) ("It is well-accepted that federal courts may take judicial notice of proceedings in other courts if those proceedings have relevance to the matters at hand.").  Before requesting judicial notice of those materials, the government will endeavor to reach a stipulation with the defendant as to precisely which allegations and responses will be made available to the jury.  These admissions of the defendant should be admitted.

   D. **Government's Response to Defendant's Motion in Limine to Exclude Criminal Record and/or Any Other Bad Act Evidence [Dkt. No. 133] and Defendant's Motion in Limine for Disclosure of Fed. R. Evid. 608(B) and Fed. R. Evid. 609 Information, if any [Dkt. No. 140]**

The government does not intend to utilize 608(b) evidence in its case in chief.  Should the Defendant testify, the Court should permit the Government, on cross-examination, to impeach his credibility by admitting a certified copy of the defendant's 2011 North Carolina conviction for felony conversion.  *United States v. Meader*, 914 F. Supp. 656, 659 (D. Me. 1996).  Pursuant to FRE 609, the Defendant's conviction satisfies the conditions for admissibility under Rule 609(a)(2) because it was for a crime of dishonesty. *See United States v. Govereh*, No. 1:07-CR-131-JEC, 2010 WL 28565 at *5-*7 & n.7 (N.D. Ga. Jan. 5, 2010) (noting that prior conviction for scheme to defraud was admissible under Rule 609(a)(2)).

**E. The Court Should Deny Defendant's Motion in Limine Regarding Hearsay Testimony [Dkt. No. 134]**

As noted above in the government's response to defendant's motion at Dkt. No. 128, district courts in the First Circuit are instructed that when faced with a challenge to the admission of a co-conspirator hearsay statements, they are to admit the statement provisionally and wait until the end of trial to make a final ruling. *Supra* pp 3-4. Nonetheless, the government has listed in its response to Docket Entry 128 examples of the co-conspirator statements it intends to introduce at trial and offered a summary proffer showing why these statements are not hearsay. Accordingly, these and other similar statements by the defendant's co-conspirators should be admitted.

**F. The Court Should Deny Defendant's Motion in Limine to Exclude Evidence Relating to Personal Expenditures [Dkt. No. 135]**

The Court should deny the defendant's motion to exclude evidence of personal expenditures. Courts have routinely held that such evidence is admissible to prove that a diversion of funds was fraudulent. *United States v. Solomonson*, 908 F.2d 358, 361 (8th Cir. 1990); *United States v. Brickey*, 426 F.2d 680, 685-86 (8th Cir. 1970); *see United States v. Hathaway*, 798 F.2d 902, 908-09 (6th Cir. 1986); *United States v. Brutzman*, 731 F.2d 1449, 1452-53 (9th Cir. 1984); *United States v. Knight*, 607 F.2d 1172, 1176 (5th Cir. 1979); *United States v. Krohn*, 573 F.2d 1382, 1388-89 (10th Cir. 1978). Here, the government intends to present evidence that money investors wired to accounts controlled by the defendant was diverted from My Big Coin and was instead transferred to pay for personal expenses including, among other things, more than $330,000 spent on jewelry at the Southampton Jewelry Exchange, and more than $500,000 spent at Lord and Guy, LLC, an auction house based in Southampton, New York, on antique coins and jewelry, artwork, decorative figures and a rare stone. The government is entitled to prove that diversions occurred, and to argue that the personal expenditure evidence is probative that such

diversion was fraudulent. In other words, these personal expenditures are probative of the defendant's intent in soliciting these funds from investors—precisely so that he could divert the funds for his personal use.

### G. The Court Should Admit Evidence that the Defendant and My Big Coin Failed to File Taxes Because it is Evidence that the Defendant Knew that My Big Coin was a Fraudulent Scheme and Deny Defendant's Motion in Limine to Exclude Evidence that Defendant and Others Failed to File Tax Returns [Dkt. No. 136]

The government has produced to the defense in discovery tax records, including a Certification of Lack of Record, demonstrating that the Internal Revenue Service does not have any record of tax documents filed by My Big Coin or the defendant for the years 2013 through 2018. The government intends to introduce this (and other, related) evidence at trial and the defendant has moved to exclude it. The Court should deny the defendant's motion and admit this evidence.

The failure of My Big Coin and the defendant to file required tax documents is probative of the defendant's intent and consciousness of guilt and is "intrinsic" to the crimes charged. *United States v. Epstein*, 426 F.3d 431, 439 (1st Cir. 2005) ("[T]he fact that [defendant] did not include all of his income [on his tax return] suggests that he had knowledge of the fraudulent scheme. The judge did not abuse his discretion in finding the tax return to be part and parcel of the crime and properly allowed the evidence as intrinsic to the crime and not governed by Rule 404(b)."); *United States v. Manning,* 79 F.3d 212, 218 (1st Cir.1996) ("Rule 404(b), by its very terms, excludes only extrinsic evidence—evidence of other crimes, wrongs, or acts—whose probative value exclusively depends upon a forbidden inference of criminal propensity. Evidence intrinsic to the crime for which the defendant is on trial, accordingly, is not governed by Rule 404(b)."); *see also United States v. Finn*, No. 2:13-cr-0439-KJD-VCF, 2020 U.S. Dist. LEXIS 10999, at *8 (D. Nev. Jan. 23,

2020) (holding that defendant's refusal to file a tax return on profits from charged scheme is intrinsic evidence that defendant received illegitimate payments from a fraudulent scheme)

Separately, and in the alternative, this evidence is admissible pursuant to Fed. R. Evid. 404(b) as evidence of the charged wire fraud scheme and money laundering.[6]  For example, under Rule 404(b), the government may offer this evidence to demonstrate knowledge that the proceeds obtained by the defendant and My Big Coin were the result of illegal activity.  *See, e.g.*, *United States v. Black*, 2014 WL 5783067, at *5 (E.D.N.Y. Nov. 5, 2014) ("[E]vidence of the defendant's failure to report significant sums of money in his tax filings is admissible under Rule 404(b) as evidence of the defendant's knowledge that the money was the proceeds of illegal activity.").  The government may also offer this evidence as probative of the defendant's intent to conceal the proceeds of fraudulent activity.  *See, e.g.*, *United States v. Mangual-Santiago*, 562 F.3d 411, 429 (1st Cir. 2009) (holding that defendant's "financial activity, coupled with his failure to report his income, is indicative of an intent to conceal funds").

### H. Government's Response to Defendant's Motion in Limine to Exclude Unfairly Prejudicial References [Dkt. No. 137]

Defendant cites no authority in support of his request that the government be forbidden to use the term "victim" in front of the jury. Here, the government does not intend to address the investor witnesses as victims during the trial, but it may appropriately use the term "victim" at other times, such as closing argument. Courts have found such a practice to not be unfairly prejudicial. *United States v. Shankle*, No. 16-CR-7, 2017 U.S. Dist. LEXIS 228028, at *11 (E.D.

---

[6] While the government's position is that the above-described evidence is intrinsic and does not fall within the ambit of Fed. R. Evid. 404(b), out of an abundance of caution, the government provided the defendant early notice of its intent to introduce this evidence at trial through a letter on December 6, 2021.  As such, this evidence should be admitted as intrinsic or, in the alternative, under Fed. R. Evid. 404(b).

Wis. Sep. 1, 2017); *United States v. Iacona*, 728 F.3d 694 (7th Cir. 2013); *see also United States v. Fletcher*, 1995 U.S. App. LEXIS 3939, at *23 (9th Cir. Feb. 24, 1995) (district court did not abuse its discretion by permitting witnesses to refer to "victims"); *United States v. Perez*, No. EDCR1300087AVAP, 2014 U.S. Dist. LEXIS 198353, 2014 WL 12689229, at *9 (C.D. Cal. May 15, 2014) (denying the defendant's motion in limine seeking to preclude use of the term "victim" at trial after noting that the term could be fairly used in some circumstances), aff'd, 662 F. App'x. 495 (9th Cir. 2016).

### I. Government's Response to Defendant's Motion in Limine to Sequester Witnesses and to Exclude Testifying Case Agent(s) from Sitting at Counsel Table [Dkt. No. 138]

The government has no objection to the invocation of Rule 615 of the Federal Rules of Evidence. The government intends to have two agents at counsel table. The government does not intend to have either of those agents testify at trial. The government does not object to the exclusion of agents on the government's witness list from sitting at counsel table.

### J. Government's Response to Defendant's Motion in Limine for Production of Law Enforcement Notes and Tape Recordings, if any [Dkt. No. 139]

The government will produce any additional materials addressed by 18 U.S.C. § 3500 material at least 7 days before trial.

## III. OTHER POSSIBLE EVIDENTIARY ISSUES AT TRIAL

### A. Evidence of My Big Coin Social Media Posts Should Be Admitted

My Big Coin advertised on social media, including on Facebook, Twitter, and YouTube. While the defendant has stipulated to the authenticity of screen captures of the My Big Coin website and the defendant's LinkedIn profile, the defendant has not stipulated to the authenticity of the Facebook, Twitter, and YouTube social media posts. These social media postings contained various misrepresentations about My Big Coin, including many of the same misrepresentations

19

made on the My Big Coin website and by the defendant, and as such provide important evidence of the scheme to defraud.

The government will authenticate and seek to admit into evidence the Facebook, Twitter, and YouTube social media posts.  The government anticipates authenticating these social media posts through one or more witnesses that observed the social media posts.  Fed. R. Evid. 901(b)(1) (authentication requirement is satisfied by testimony of a witness with knowledge that "an item is what it is claimed to be"); *see also, e.g.*, *United States v. Blanchard*, 867 F.3d 1, 5–6 (1st Cir. 2017) (authenticity established through the "direct testimony of . . . a percipient witness").  As further support of the relevance and authenticity of these posts, the government will show that the My Big Coin website and the defendant's LinkedIn profile—which are stipulated to as authentic—contain links and specific references to My Big Coin's Facebook, Twitter, and YouTube pages.

In addition to satisfying the authenticity and relevance requirements, the social media postings are not hearsay.  They are being offered by the government to show that the statements were made, and not to prove the truth of the assertions in the social media posts.  *See* Fed. R. Evid. 801(c), Advisory Committee's Note ("If the significance of an offered statement lies solely in the fact that it was made, no issue is raised as to the truth of anything asserted, and the statement is not hearsay.").  As such, this evidence should be admitted.

### B.  The Government's Summary Exhibits of Voluminous Financial Records Should Be Admitted

The government intends to present testimony from a forensic analyst that has reviewed various financial records, including records of accounts controlled by the defendant.  Through that testimony, the government will seek to admit exhibits that summarize voluminous financial records.  These "summary tools" are admissible "to clarify complex testimony and evidence" under Rule 1006 of the Federal Rules of Evidence.  *United States v. McElroy*, 587 F.3d 73, 81 (1st

Cir. 2009); *see also United States v. Appolon*, 695 F.3d 44, 61-62 (1st Cir. 2012) (affirming admission of summary exhibits that obviated the need for "the jury to sift through[] mortgage and sale records for each of the twenty-one properties involved in appellants' scheme[] and also facilitated tracing the scheme's proceeds"); *accord United States v. Milkiewicz*, 470 F.3d 390, 398 (1st Cir. 2006) ("[P]edagogical devices may be sufficiently accurate and reliable that they, too, are admissible in evidence, even though they do not meet the specific requirements of Rule 1006.") Summary exhibits are admissible either individually or in addition to the underlying records. *Milkiewicz*, 470 F.3d at 396–97 ("[W]hile in most cases a Rule 1006 chart will be the *only* evidence the fact finder will examine concerning a voluminous set of documents, in other instances the summary may be admitted *in addition to* the underlying documents to provide the jury with easier access to the relevant information.") (citations omitted).  And the government may also elicit testimony to describe and explain the summary exhibits.  *McElroy*, 587 F.3d at 81 ("[S]ummary witness testimony may be permitted pursuant to Rule 611(a).") (citing *Milkiewicz*, 470 F.3d at 397–98 and *United States v. Stierhoff*, 549 F.3d 19, 27 (1st Cir. 2008)); *Appolon*, 695 F.3d at 63 (affirming introduction of summary witness testimony where testimony "was limited to introducing and explaining the summary charts [the summary witness] prepared").  This evidence should be admitted.

## C. The Government's Evidence of Defendant's Prior Statements as well as Statements of Third Parties that Provide Necessary Context for Defendant's Statements Should Be Admitted

The government will seek to introduce certain statements by the defendant.  These statements include, for example, oral statements made to witnesses, statements made by the defendant in written communications, and statements made by the defendant in his response to a civil complaint filed by the Commodity Futures Trading Commission (*see* Judicial Notice section,

below).  The defendant's statements, if offered by the government, are non-hearsay because they are statements of a party opponent.  Fed. R. Evid. 801(d)(2)(A).

The government may also introduce statements, whether oral or written, of by third parties to provide necessary context or background to understand the defendant's statements.  Evidence is not hearsay if offered for the limited purposes of providing provide "background" or "context." *See, e.g.*, *United v. Page*, 521 F.3d 101, 106 (1st Cir. 2008); *United States v. Catano*, 65 F.3d 219, 225 (1st Cir. 1995) (defendant's part of conversations admissible as non-hearsay admissions of a party and cooperator's part of the conversations admissible to place admissions into context and make them intelligible to the jury); *United States v. Castro-Lara*, 970 F.3d 976, 981 (1st Cir. 1992). The same principle applies to emails or other statements that pose questions, issue instructions, or make suggestions, because such expressions are not offered for the truth of their contents, but instead to provide context for defendant's response (or lack of response).  *See, e.g., United States v. Vest*, 842 F.2d 1319, 1330 (1st Cir. 1988) (noting that a question is not hearsay); *United States v. Murphy*, 193 F.3d 1, 5 (1st Cir. 1999) (same, for instructions).[7]

### D.  Defendant May Not Introduce His Own Prior Statements

Unlike the government, the defendant may not offer or elicit defendant's prior statements at trial because those statements are hearsay.  *United States v. Rivera-Hernandez*, 497 F.3d 71, 80 (1st Cir. 2007) (citing Fed. R. Evid. 801, 802).  The defendant is not permitted to circumvent this rule by eliciting defendant's statements through the cross-examination of other witnesses.  *United States v. Bauzo-Santiago*, 49 F. Supp. 3d 155, 157 (D.P.R. 2014) (prohibiting defendant from eliciting defendant's "out-of-court statement during cross-examination of government witnesses

---

[7] The government also reserves the right to introduce certain statements for their truth, including pursuant to Fed. R. Evid. 801(d)(2)(E), *see supra* § II.A.

to impeach the witnesses") (citing *Bemis v. Edwards,* 45 F.3d 1369, 1372 (9th Cir. 1995) and

*United States v. Hudson,* 970 F.2d 948, 956 (1st Cir. 1992)).   Further, merely because the

government presents only a subset of defendant's out-of-court statements, defendant is not entitled

to present her other statements absent a need to avoid "misunderstanding or distortion."   *United*

*States v. Simonelli,* 237 F.3d 19, 28 (1st Cir. 2001) (rule of completeness "does not permit the

admission of otherwise inadmissible evidence simply because one party has referred to a portion

of such evidence, . . . rather, it operates to ensure fairness where a misunderstanding or distortion

created by the other party can only be averted by the introduction of the full text of the out-of-

court statement").   As such, the defendant should be precluded from offering his own prior

statements.


Respectfully submitted,

RACHAEL S. ROLLINS
United States Attorney

By:   */s/ Christopher J. Markham*
CHRISTOPHER J. MARKHAM
Assistant United States Attorney

*/s/ Siji Moore*
SIJI MOORE
Trial Attorney

<u>CERTIFICATE OF SERVICE</u>

      I hereby certify that this document was filed through the ECF system and will be sent electronically to the registered participants identified on the Notice of Electronic Filing (NEF).


Dated:  June 16, 2022           By:     */s/ Christopher J. Markham*
                                 CHRISTOPHER J. MARKHAM
                                 Assistant United States Attorney


                                 */s/ Siji Moore*
                                 SIJI MOORE
                                 Trial Attorney