IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Criminal No. 19-cr-10063-DJC |
| ) | |
| RANDALL CRATER, ) | |
| ) | |
| Defendant ) | |

**GOVERNMENT'S SUPPLEMENTAL OPPOSITION TO DEFENDANT RANDALL CRATER'S MOTION IN LIMINE REGARDING HEARSAY TESTIMONY (DKT NO. 134)**

Defense previously filed a motion contesting the admissibility of purported hearsay statements by other individuals working at the defendant's company, My Big Coin. Dkt. No. 134. As the government explained in its trial brief, most (if not all) of those statements are admissible for a non-hearsay purpose—for example, to show that the statements were made or to show the effect on the listener. Dkt. No. 141. The government provides this supplemental briefing to provide a basis for admissibility of those statements (if necessary) for their truth: that the individuals were operating as agents of the defendant within the meaning of Rule 801(d)(2)(D) of the Federal Rules of Evidence.

  **I.     Legal Background for Fed. R. Evid. 801(d)(2)(D)**

Parties wishing to introduce statements into evidence under Rule 801(d)(2)(D) must establish by a preponderance of the evidence: "(1) that an agency relationship existed; (2) that the statements were made during the course of the relationship; and (3) that the statements relate to matters within the scope of the agency". *Gomez v. Rivera Rodriguez*, 344 F.3d 103, 116 (1st Cir. 2003). The statement itself is not required to be within the scope of the speaker's agency. *Larch v. Mansfield Mun. Elec. Dep't*, 272 F.3d 63, 72 (1st Cir. 2001). All that is required is that the statement "concern a matter within the scope of the agency". *Id.*

The Federal Rules of Evidence do not define "agent", but courts have adopted the traditional meanings of these terms reflected in the federal common law of agency. *Gomez*, 344 F.3d at 116 (citing *City of Tuscaloosa v. Harcros Chems., Inc.*, 158 F.3d 548, 557 n. 9 (11th Cir. 1998); *Lippay v. Christos*, 996 F.2d 1490, 1497 (3d Cir. 1993)). An agency relationship between an employee declarant and a defendant employer may be established by a variety of evidence, including: that the declarant is directly responsible to the defendant; that the declarant was hired by the defendant; that the declarant worked on matters in which the defendant was actively involved; or that the defendant directed the declarant's work on a continuing basis. *United States v. Agne*, 214 F.3d 47, 55 (1st Cir. 2000). The Court should consider the purported agent's statement in determining whether an agency relationship exists, though the Court may not find an agency relationship based on the statement alone. *Gomez*, 344 F.3d at 116; *see also* Fed. R. Evid. 801(d)(2) ("The statement must be considered but does not by itself establish . . . the existence or scope of the relationship under (D)"). The government must therefore provide some additional evidence, extrinsic to the possible hearsay statement itself, that tends to show the existence of an agency relationship.

> **II.     The Court Should Admit the Statements of the Defendant's Agents for the Truth of the Matter Asserted if Offered by the Government**

The defendant is the self-described "creator" and "developer" of My Big Coin. Uncontested Ex. 1.a (Randall Crater LinkedIn Profile); *see also* Uncontested Ex. 11T (Email, 2014.4.11– from the defendant to Robert McGowan, a government witness, stating "I built the system"). Witnesses for the government will also testify that the defendant held himself out as the person who was operating various aspects of My Big Coin. In this role, the defendant paid several individuals to help him aggressively market My Big Coin and recruit additional investors, including: (1) Mark Gillespie, (2) Michael Kruger, and (3) Marcus Gorby. As the defendant

explained in a text message: "I'm allowing guys to promote the coin". Uncontested Ex. 14F (Text Message, 2014.1.4 – from the defendant to James Douglas, a government witness). The defendant went on to explain that he had "guys working for no money out of pocket" but who could make "a % off the deal." *Id.*

The evidence will show that the "guys" acting as the defendant's agents were Mark Gillespie, Michael Kruger, and Marcus Gorby. The defendant's emails, including emails that are uncontested exhibits, show these agents of the defendant marketing and/or soliciting investors and then reporting back to the defendant. For example, the emails reflect that Marcus Gorby was assisting the defendant in setting up My Big Coin's social media. *See, e.g.*, Uncontested Exs. 11Q (Email, 2014.4.3 – Gorby providing the defendant links to the My Big Coin Facebook and Twitter pages), 12v (Email, 2015.8.15 – Gorby providing the defendant a copy of the upcoming My Big Coin YouTube video). The emails also show that Mark Gillespie and Michael Kruger were soliciting funds from investors on behalf of the defendant and then reporting back to the defendant. *See, e.g.*, Uncontested Exs. 11d (Email, 2014.2.1 – Gillespie emailing the defendant about his "commitment" to My Big Coin and negotiating how he will be compensated), 11g (Email, 2014.3.1 – Gillespie coordinating with the defendant regarding how to respond to an investor's questions), 11u (Email, 2014.4.23 – Gillespie telling the defendant that he has spoken with Kruger about a specific investor who will be investing "17k"), 11y (Email, 2014.8.6 – Kruger asking Gillespie to send an investor bank wiring information, coping the defendant).

Further, the defendant's bank records show that the defendant was paying Gillespie, Kruger, and Gorby for their services using money that originated from My Big Coin investments. The following, which will be presented at trial through the testimony of a government witness,

reflects checks and/or wire transfers to the defendant's agents that originate from accounts controlled by the defendant:

| Date of Transfer | Account | Recipient | Amount |
|---|---|---|---|
| 2/19/2014 | WF 5976 | Marcus Gorby | $700 |
| 3/20/2014 | WF 5976 | Marcus Gorby | $5,000 |
| 4/16/2014 | WF 5976 | Marcus Gorby | $5,000 |
| 4/25/2014 | WF 5976 | Marcus Gorby | $1,200 |
| 5/9/2014 | WF 5976 | Marcus Gorby | $3,500 |
| 5/19/2014 | WF 5976 | Michael Kruger | $25,000 |
| 5/22/2014 | WF 5976 | Mark Gillespie | $5,000 |
| 6/5/2014 | WF 5976 | Michael Kruger | $25,000 |
| 6/24/2014 | WF 5976 | Marcus Gorby | $5,000 |
| 7/3/2014 | WF 5976 | Mark Gillespie | $3,000 |
| 7/3/2014 | WF 5976 | Marcus Gorby | $3,000 |
| 7/15/2014 | WF 5976 | Marcus Gorby | $5,000 |
| 7/21/2014 | WF 5976 | Michael Kruger | $25,000 |
| 8/12/2014 | WF 5976 | Marcus Gorby | $5,000 |
| 8/27/2014 | WF 5976 | Marcus Gorby | $2,000 |
| 9/10/2014 | BoA 6356 | Marcus Gorby | $10,500 |
| 9/23/2014 | BoA 6487 | Mark Gillespie | $5,000 |
| 10/30/2014 | BoA 6487 | Mark Gillespie | $5,000 |
| 12/11/2014 | BoA 6487 | Mark Gillespie | $5,000 |
| 12/11/2014 | BoA 6487 | Marcus Gorby | $5,000 |
| 4/8/2016 | BBT 2534 | Mark Gillespie | $2,000 |
| 12/17/2015 | BBT 7610 | Marcus Gorby | $3,000 |
| 12/17/2015 | BBT 7610 | Mark Gillespie | $5,000 |

Ex. I (financial summary created by FBI analyst Kathleen Brekenfeld, prepared pursuant to Fed. R. Evid. 1006 and based on the stipulated to bank records). Summary testimony and the bank records will also show that the defendant controlled bank accounts that received over $6,000,000 in investor funds. This further establishes the defendant's ownership, control, and direction of the My Big Coin scheme and the agents he paid to execute it.

In addition to this documentary evidence, there will be witness testimony establishing that individuals promoting My Big Coin were acting at the defendant's direction. For example, the government anticipates that multiple witnesses will testify that they spoke directly to one or more

of these agents, and in particular Mark Gillespie. Because Gillespie was speaking to prospective investors as a paid agent of the defendant, his statements are not only admissible for non-hearsay purposes (*e.g.*, effect on listener), but they are also admissible for the truth of the matter asserted. While many of Gillespie's statements consisted of false advertising about My Big Coin—and therefore will not be offered for their truth—Gillespie also made a small number of statements that the government may ask the jury to consider for their truth. For example, the government intends to introduce a text message from Gillespie to an investor (John Lynch, a government witness) where Gillespie explains how the price of the My Big Coin currency is determined. Contested Ex. D (Text Message, 2015.12.10 – Gillespie telling an investor that "[s]ome of calculus for 'current value' I believe is up to 'us', and not 100% math and algorhythm."). There were also instances where Gillespie told investors that the information about My Big Coin that Gillespie was repeating had been provided by the defendant. Those assertions were made by Gillespie as an agent of the defendant concerning a matter within the scope of his employment and during the existence of that relationship, such that they are admissible against the defendant.

### III. Conclusion

For the foregoing reasons, in addition to admitting statements of the defendant's agents for non-hearsay purposes, the Court should also admit certain agent statements pursuant to Fed. R. Evid. 801(d)(2)(D) when offered by the government for their truth.

|  |  |
|---|---|
|  | Respectfully submitted, |
|  | RACHAEL S. ROLLINS<br>United States Attorney |
| By: | */s/ Christopher J. Markham*<br>CHRISTOPHER J. MARKHAM<br>Assistant United States Attorney |
|  | */s/ Siji Moore*<br>SIJI MOORE<br>Trial Attorney |

CERTIFICATE OF SERVICE

I hereby certify that this document was filed through the ECF system and will be sent electronically to the registered participants identified on the Notice of Electronic Filing (NEF).

| Dated: July 10, 2022 | By: | */s/ Christopher J. Markham*<br>CHRISTOPHER J. MARKHAM<br>Assistant United States Attorney |
|---|---|---|
|  |  | */s/ Siji Moore*<br>SIJI MOORE<br>Trial Attorney |