UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v.                                            ) | 19-cr-10063-DJC |
| ) | |
| RANDALL CRATER,                 ) | |
| ) | |
| Defendant                               ) | |

**DEFENDANT'S RENEWED MOTION FOR A JUDGMENT OF ACQUITTAL AND MOTION FOR NEW TRIAL**

Defendant Randall Crater, by and through undersigned counsel, hereby moves this Honorable Court, pursuant to Rule 29 of the Federal Rules of Criminal Procedure for a judgment of acquittal on all Counts. In the alternative, defendant hereby moves for a new trial under Rule 33 of the Federal Rules of Criminal Procedure. For the reasons set forth below, and in the various filing and transcripts that this motion incorporates by reference, the Court should enter a judgment of acquittal on all counts or, in the alternative, order a new trial on all counts.

## LEGAL STANDARDS

A district court "must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a). Where a verdict has been rendered by the jury, "the inquiry focuses on whether 'a rational jury could have found that the government proved each element of the crime beyond a reasonable doubt.'" *U.S. v. Appolon*, 715 F.3d 362, 367 (1st Cir. 2013) (quoting *U.S. v. Mardirosian*, 602 F.3d 1, 7 (1st Cir. 2010)).

Although a district court must look at the evidence in the light most favorable to the jury's verdict, "juries do not have carte blanche" under the Rule 29 standard. *U.S. v. Spinney*, 65 F.3d 231, 234 (1st Cir. 1995); *see also U.S. v. Martin*, 228 F.3d 1, 10 (1st Cir. 2000) (noting that "the jury verdict is not given a 'free pass'" under Rule 29). The court is required to "take a hard look at the record and to reject those evidentiary interpretations and illations that are unreasonable, insupportable, or overly speculative.'" *Spinney*, 65 F.3d at 234; *U.S. v. Ofray-Campos*, 534 F.3d 1, 31-32 (1st Cir. 2008). "If the evidence viewed in the light most favorable to the verdict gives equal or nearly equal circumstantial support to a theory of guilt and a theory of innocence of the crime charged, th[e] court must reverse the conviction." *U.S. v. Morillo*, 158 F.3d 18, 22 (1st Cir. 1998). "This is so because . . . where an equal or nearly equal theory of guilt and a theory of innocence is supported by the evidence . . . 'a reasonable jury must necessarily entertain a reasonable doubt.'" *U.S. v. Andujar*, 49 F.3d 16, 20 (1st Cir. 1995) (emphasis in original); *accord U.S. v. Cassese*, 428 F.3d 92, 99 (2d Cir. 2005) ("[I]f the evidence viewed in the light most favorable to the prosecution gives equal or nearly equal circumstantial support to a theory of guilt and a theory of innocence, then a reasonable jury must necessarily entertain a reasonable doubt").

In addition, where the trial record lacks any evidence supporting an element of a particular count, the Court must enter a judgment of acquittal with respect to that count. *See United States v. Fernandez*, 913 F.3d 244, 247-51 (1st Cir. 2019) (holding that the district court should have granted the defendants' Rule 29 motion where the

trial record did not contain any evidence concerning one of the elements of federal programs bribery).

Federal Rule of Criminal Procedure 33(a) provides that "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." "The rules do not define 'interests of justice,'" *U.S. v. Wheeler*, 753 F.3d 200, 208 (D.C. Cir. 2014) (internal quotation marks omitted), and whether to grant a motion for a new trial pursuant to Rule 33 "is ordinarily a 'judgment call,'" *U.S. v. Connolly*, 504 F.3d 206, 211 (1st Cir. 2007) (citation omitted), that "rests within the discretion of the trial judge," *U.S. v. Rodriguez*, 738 F.2d 13, 17 (1st Cir. 1984).

The interests-of-justice standard encompasses more than what would constitute reversible error on appeal, *see United States v. Vicaria*, 12 F.3d 195, 198 (11th Cir. 1994), and courts have granted new trials "in a variety of situations in which the substantial rights of the defendant have been jeopardized by errors or omissions during trial," *U.S. v. Cabrera*, 734 F. Supp. 2d 66, 87-88 (D.D.C. 2010) (internal quotation marks omitted), *aff'd in part sub nom. United States v. Vega*, 826 F.3d 514 (D.C. Cir. 2016) (per curiam). "The ultimate test on a Rule 33 motion is whether letting a guilty verdict stand would be a manifest injustice." *United States v. Ferguson*, 246 F.3d 129, 134 (2d Cir. 2001) (citing *U.S. v. Sanchez*, 969 F.2d 1409, 1414 (2d Cir. 1992)).

A timely-raised trial error will also warrant a new trial, unless the government shows that the error was harmless. *See U.S. v. Curley*, 639 F.3d 50, 58 (2d Cir. 2011).

Courts typically consider several factors in determining whether the error was harmless: (1) whether the error went to a critical issue in the case; (2) whether the government capitalized on the error in its arguments to the jury; and (3) the strength of the government's case. *Id.* Of these factors, the strength of the government's case is "[t]he most critical." *Id.* (internal quotation marks omitted); *see also U.S. v. Forrester*, 60 F.3d 52, 64-65 (2d Cir. 1995) ("Error going 'to the heart' of a critical issue is less likely to be harmless."). Even if a court finds each individual error harmless, it must grant a new trial if their "aggregate" effect was to deny the defendant a fair trial. *U.S. v. Sepulveda*, 15 F.3d 1161, 1195-96 (1st Cir. 1993).

## ARGUMENT

I.  THE JURY'S VERDICT ON ALL COUNTS MUST BE REVERSED IN FAVOR OF ACQUITTAL.

   A. No Rational Jury Could Have Found That The Government Proved Each Element of Wire Fraud Beyond A Reasonable Doubt.

   1. The government failed to prove that My Big Coin was not a cryptocurrency.

In its opening, the government told the jury that Mr. Crater "told the world that My Big Coin was selling a cryptocurrency." Trial Transcript ("TT") Day 2, p. 2-23, l. 16-17. In its opening, the government also told the jury "[t]here was no Big Coin cryptocurrency." *Id.* l. 23-24. The government also told the jury, in its opening, that "In reality, My Big Coin was just another virtual currency, like those ones from back in the 1990s, and it was basically worthless." *Id.* p. 2-30, l. 6-8. Finally, in its closing, the government told the jury that Mr. Crater "told people that My Big Coin was a cryptocurrency even though it had no blockchain and no cryptography. TT, Day 7, p.

4

7-123, l. 16-18.

The problem with these statements is that no rational jury could have found that the government proved, beyond a reasonable doubt, that My Big Coin was not a cryptocurrency between 2014 and 2016 because the government did not prove what My Big Coin was during these years. Indeed, the government presented no evidence as to what My Big Coin was between 2014 and 2016 because the government's investigation failed to uncover what was behind the My Big Coin website during this most critical time period.

Moreover, even though the government did not affirmatively prove what My Big Coin was between 2014 and 2016, the government told the jury that Mr. Crater lied when he said it was a cryptocurrency. Usually when the government claims that a defendant made a false statement, they prove that the statement was, in fact, false. However, in this case, the government told the jury that Mr. Crater's statement that My Big Coin was a cryptocurrency was a lie even though it never proved that My Big Coin was not a cryptocurrency between 2014 and 2016. Indeed, all that the government proved was that My Big Coin "was not available as a publicly available cryptocurrency until June 28, 2017." TT, Day 4, p. 237, l. 23-25 – p. 238, l. 238, l. 1-4.[1]

---

[1] The government's expert, Pamela Clegg, testified on cross-examination:
Q. Okay, Now, your opinion is that, based on blockchain analysis, MBC was not available as a cryptocurrency until June 28, 2017?
A. Yes.
Q. Would you agree with me that it would be more precise to say, based on blockchain analysis, MBC was not available as a publicly available cryptocurrency until June 28, 2017?
A. Yes.

More importantly, the government's mischaracterization of the evidence in this case clearly mislead the jury into believing that My Big Coin was not a cryptocurrency when, in fact, the government never proved this fact with any positive evidence. Even more disturbing, however, is the fact that by proclaiming without proving that My Big Coin was not a cryptocurrency, the government shifted the burden of proof on this critical fact to Mr. Crater and the court permitted the government to do so.

2. The government failed to prove that Mr. Crater acted with the specific intent to defraud.

The government's case rested on two fundamentally flawed allegations: (1) that Mr. Crater willfully participated in a scheme to defraud; and (2) that Mr. Crater did so with the requisite specific intent to defraud. Even a review of the evidence in the light most favorable to the government demonstrates that the government failed to prove either of these facts. Indeed, the government's presentation of proof was notable for its failure to show that anyone associated with Mr. Crater believed or indicated that they knew they were participating in a scheme to defraud. Moreover, given the numerous communications between Mr. Crater and others, it is noteworthy that the government offered no evidence of a "smoking gun" communication.

Rather, the evidence showed that Mr. Crater was acting in good faith and thus could not have had the specific intent to defraud. For example, the government did not prove that Mr. Crater knew for a fact that My Big Coin was not backed by gold. Rather, it was the defense who presented evidence that Mr. Crater was mislead by William Donahue and John Roche into believing that My Big Coin was backed by gold. It was the defense's investigation and interview with Mr. Richard Galvin that

6

revealed that Mr. Donahue was not authorized to commit Mr. Galvin's gold to My Big Coin. However, Mr. Crater did not know this fact when he and others were stating that My Big Coin was backed by gold. Indeed, the evidence presented by the defense showed that Mr. Crater was defrauded. Thus, when he stated to others that My Big Coin was backed by gold he truly believed this fact to be true even though it was not. As a result, the evidence shows that Mr. Crater was acting in good faith.

> 3. The government failed to prove that My Big Coin did not have a relationship with Mastercard.

Notwithstanding Mr. Audet's testimony that My Big Coin did not have a "partnership" with Mastercard, numerous witness for the government and defense testified that My Big Coin did issue a debit card with the Mastercard logo on the card. Specifically, Mr. Lynch testified that he received a card from Allied Bank with the legend preferred customer and Mastercard on it. TT, Day 3, p. 3-24, l. 8-16. Peter Bell testified that he received an Ultra Card with the legend preferred customer and Mastercard on it. Ex. 37, TT Day 5, p. 5-142, l. 16-18. Jay Byrd testified that he received a Mastercard in the mail with the legend preferred customer on it. TT, Day 4, p. 86, l. 10-15. Tom Callahan testified that he received an Ultra Card with the legend preferred customer on it and that he used the card and it worked as intended. TT, Day 7, p. 7-87 l. 22 – p. 7-88, l. 13. Given that this evidence gives equal or nearly equal circumstantial support to a theory of guilt and a theory of innocence, a reasonable jury would necessarily entertain reasonable doubt. *U.S. v. Andujar*, 49 F.3d 16, 20 (1st Cir. 1995) (emphasis in original); *accord U.S. v. Cassese*, 428 F.3d 92, 99 (2d Cir. 2005) ("[I]f the evidence viewed in the light most favorable to the

prosecution gives equal or nearly equal circumstantial support to a theory of guilt and a theory of innocence, then a reasonable jury must necessarily entertain a reasonable doubt").

> B. No Rational Jury Could Have Found That The Government Proved That Mr. Crater's Monetary Transactions Were The Proceeds of Criminal Activity Beyond A Reasonable Doubt.

The government failed to present sufficient evidence to show that the wire transfers set forth in the Indictment involved "criminally derived property". Specifically, Count Five of the Indictment alleges that the $100,000.00 wire transfer on May 2, 2014, was criminally derived property.[2] *See* Exhibit 2B, p. 52. While it is true that Mr. Lynch made two wires to the Wells Fargo Account ending in 5976 on May 1, 2014, in the amounts of $250,000.00 and $190,000.00, respectively, the Wells Fargo Account still contained a balance of $623,673.35 after Mr. Crater's May 2nd wire transfer. Thus, the evidence is insufficient to show that Mr. Crater's May 2nd wire transfer was criminally derived property as a matter of law. *See United States v. Rutgard*, 116 F.3d 1270, 1293 (9th Cir. 1997)(§ 1957 does not create a presumption that any transfer of cash in an account tainted by the presence of fraudulent proceeds must be a transfer of these proceeds); *Compare, United States v. Rivera-Izquierdo*, 850 F.3d 38, (1st Cir. 2017)(sufficient evidence that defendant was aware that funds he obtained from his wife to purchase vehicles constituted "criminally derived

---

[2] Defendant notes that the Indictment does not charge Mr. Crater with money laundering for depositing the wires from Mr. Lynch into the Wells Fargo Account ending in 5976. Rather, the unlawful monetary transactions charged in the Indictment are the wire transfers out of the Wells Fargo Account to Mr. Crater's Bank of America Account ending in 6356.

property" in light of the evidence that defendant was aware of, and participated in, wife's fraudulent scheme and defendant knew wife had no source of revenue other than the fraudulently obtained funds).

Similarly, Count Six of the Indictment alleges that the $150,000.00 wire transfer on May 15, 2014, was criminally derived property. However, the evidence also shows that Mr. Lynch made a $700,000.00 wire transfer to purchase an interest in a marijuana license unrelated to the alleged wire fraud scheme in this case and after the May 15th wire transfer, the account still had a balance of $1,214,608.74. *See* Exhibit 2B, p. 54. Thus, the evidence is insufficient to show that Mr. Crater's May 15th wire transfer was criminally derived property as a matter of law.

Finally, Count Seven of the Indictment alleges that the $125,000.00 wire transfer on June 2, 2014, was criminally derived property. However, the evidence shows that Mr. Lynch and others deposited $1,605,321.10 into the Wells Fargo Account between January 13, 2014 and May 29, 2014 and, after the June 2nd wire transfer, the account still had a balance of $3,005,300.06. *See* Exhibit 2B, p. 63. Thus, the evidence is insufficient to show that Mr. Crater's June 2nd wire transfer was criminally derived property as a matter of law.

    C. No Rational Jury Could Have Found That The Government Proved That My Big Coin Was A Money Transmitting Business Beyond A Reasonable Doubt.

In its rebuttal, the government argued that exchanging money is unlawful if it is incident to an unlicensed money transmitting business and noted that the evidence showed checks from Randall Crater saying these are for "coin buyback" and it's

related to My Big Coin that's an unlicensed money transmitting business. TT, Day 7, p. 7-161, l. 1-7. First, if My Big Coin was not a cryptocurrency and My Big Coin Coins were not real, it is difficult to understand how a reasonable jury could conclude that a personal check with the notation Coin Buyback in the Memo line is proof beyond a reasonable doubt that My Big Coin was a money transmitting business. Second, if writing a personal check to another constitutes a money transmitting business, everyone who writes checks would be required to register with FinCEN. Third, writing a personal check is inconsistent with the Court's jury instructions which limits "money transmitting" to "transferring funds on behalf of the public by any and all means including but not limited to transfers … by wire, check, draft, facsimile or courier." Thus, the government's evidence was not sufficient to prove that Mr. Crater was operating a money transmitting business.

II. THE JURY'S VERDICT SHOULD, AT A MINIMUM, BE SET ASIDE FOR A NEW TRIAL.

In the alternative, for all of the reasons that Mr. Crater is entitled to a judgment of acquittal on all counts under Rule 29 of the Federal Rules of Criminal Procedure, which Mr. Crater reasserts, and for the additional reasons below, Mr. Crater is also entitled to a new trial on all counts under Rule 33 of the Federal Rules of Criminal Procedure.

1. The government's closing statement and rebuttal statement contained statements that were unsupported by any evidence.

During the government's closing, the prosecutor stated:

He also told Robert McGowan that there was 300 million in gold in a bank account in his own name. But you know there was no gold.

10

Kathleen Brekenfeld showed you the defendant's bank account. *He did not have $100 million in his name in a bank in Spain. The bank records tell you he's never been to Spain. The travel records also show, never been to Spain.* And here is how you know beyond a reasonable doubt there was no gold: Because we're sitting here. Eight years later and the only gold that Randall Crater has is the jewelry that he purchased for himself and his family. See TT, Day 7, p. 7-128, l. 6-15. (emphasis added).

During the government's rebuttal, the prosecutor stated:

Now again, the defense talked to you about these emails about $100 million in gold. Just remember what the defendant told Robert McGowan, that the gold is in my name in a bank in Spain. That's Exhibit 11H. That was just a lie. The bank records, IRS records, and *the travel records show that the defendant does not have a bank account in Spain. And the defendant knows he doesn't have a bank account in Spain because he's the defendant. He knows he's never been to Spain because he's the defendant.* (emphasis added).

MR. LOPEZ: Objection.

THE COURT: Well, overruled, counsel.

MR. LOPEZ: Note my objection.

See TT, Day 7, p. 7-157, l. 18 0 7-158, l. 4.

During the government's rebuttal, the prosecutor further stated:

On the MasterCards, again, buying a prepaid MasterCard and telling people you have a deal with MasterCard is totally misleading. But most importantly, don't forget, these MasterCards did not do what he said they would do, which is spend My Big Coin currency in the real world. And, if you look at Exhibit 32 (*sic*)[3], the defendant is told that to build that system it takes 300 man hours and all the funding and that he didn't have it yet. He knew he didn't have it.

See TT, Day 7, p. 7-159, l. 12-19.

---

[3] Exhibit 12X.

It is improper for the prosecution to make a statement that is "unsupported by any evidence". *United States v. Azubike*, 504 F.3d 30, 38 (1st Cir. 2007) (citations omitted). In this case, the prosecution referred to "travel records" that were not in evidence on three occasions. Moreover, the prosecution did not merely refer to travel records that were not in evidence, but also used the so-called travel records to argue that Mr. Crater had never been to Spain and did not have a bank account in Spain. Finally, these unsupported statements were used to impeach the defendant when the prosecution stated "*defendant knows he doesn't have a bank account in Spain because he's the defendant. He knows he's never been to Spain because he's the defendant.*" (emphasis added). This improper argument was not only based on unsupported evidence but further undermined the Court's instruction to the jury that Mr. Crater has no burden of proof and is not required to testify.

Similarly, the prosecution's reference to an exhibit that stated that "to build that system it takes 300-man hours" while accurate, was used improperly to argue that Mr. Crater "did not have funding" and that "he knew he did not have funding." Specifically, the government did not prove that he did not have funding or that he knew he did not have funding. Neither of these claims by the government was supported by any evidence in the case.

Each of the errors discussed in this motion constitutes a basis for a new trial. And, collectively, their aggregate effect was to deny Mr. Crater a fair trial. Thus, the Court should grant Mr. Crater a new trial on all counts pursuant to Rule 33 of the Federal Rules of Criminal Procedure.

## CONCLUSION

For the all the reasons stated herein, the Court should enter a judgment of acquittal on all counts or, in the alternative, order a new trial on all counts.

Respectfully submitted,
For the Defendant,
Randall Crater
By his attorneys:

  /s/ Scott P. Lopez
Scott P. Lopez, BBO # 549556
splopez@lawson-weitzen.com
LAWSON & WEITZEN, LLP
88 Black Falcon Ave, Suite 345
Boston, MA 02210
617-439-4990 (tel.)
617-439-3987 (fax)

Dated: August 4, 2022

CERTIFICATE PURSUANT TO LOCAL RULE 7.1

The undersigned counsel for Randall Crater hereby certifies that he conferred with AUSA Christopher J. Markham by telephone on August 4, 2022, in a good faith attempt to resolve or narrow the issues raised in this motion.

            /s/ Scott P. Lopez
            Scott P. Lopez

CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on August 4, 2022.

            /s/ Scott P. Lopez
            Scott P. Lopez