UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 19-cr-10063-DJC |
| | ) | |
| RANDALL CRATER, | ) | |
|     Defendant | ) | |

DEFENDANT RANDALL CRATER'S EMERGENCY
MOTION FOR RELEASE PENDING APPEAL

---

Defendant Randall Crater, by and through undersigned counsel, requests this Honorable Court, pursuant to 18 U.S.C. § 3143(b), to order his release during the pendency of his appeal because Mr. Crater satisfies the three criteria required by § 3143 for his release. First, he is not likely to flee and does not pose a danger to the safety of any other person or the community. Indeed, the government has never alleged otherwise.

Second, his appeal is not for the purpose of delay and raises a substantial question of law likely to result in a reversal of his conviction. Specifically, whether this Honorable Court violated Mr. Crater's Sixth Amendment right to compulsory process by requiring Mr. Crater to comply with the so-called *Touhy* regulations for the Federal Bureau of Investigation ("FBI") and the Commodity Futures Trading Commission ("CFTC"). Moreover, this issue is a question of first impression in the First Circuit.

Third, if Mr. Crater ultimately prevails on this appellate issue, the First Circuit Court of Appeals will likely vacate his conviction. Accordingly, the Court should grant this motion and order Mr. Crater's release pending his appeal.

## ARGUMENT

### I. Mr. Crater is Unlikely to Flee.

Mr. Crater satisfies the first criterion because he is not likely to flee and is not a danger to the community. This is undisputed, and as noted at the outset, the government has never alleged otherwise. Moreover, Mr. Crater was convicted of a non-violent crime. He was arrested on February 27, 2019, and released the same day on multiple conditions of release. He has appeared at all of his court dates and has complied with all of the Court-ordered conditions of release. Clearly, he is not likely to flee and is not a danger to the community if he is released pending his appeal.

### II. Mr. Crater's Appeal Raises A Substantial Question of Law.

Mr. Crater's appeal will raise a substantial question of law that is a question of first impression in the First Circuit. That a legal issue presents a "substantial question of law" does not mean that the District Court decided the underlying issue incorrectly, but only that there is "a 'close' question or one that very well could be decided the other way." *United States v. Bayko*, 774 F.2d 516, 523 (1st Cir. 1985) (*quoting United States v. Giancola*, 754 F.2d 898, 901 (11th Cir. 1986); *see also United States v. Zimny*, 857 F.3d 97, 100 (1st Cir. 2017)("After all, substantiality under § 3143(b) requires only a showing that the question is a close one.").

    A.    The Court Violated Mr. Crater's Sixth Amendment Right To Compulsory Process When It Ruled That Mr. Crater Could Not Call Witnesses Employed By The Federal Bureau of Investigation, the United States Postal Service And The Commodity Futures Trade Commission Without First Complying With Their So-Called *Touhy* Regulations.

Under the Sixth Amendment's Compulsory Process Clause, a defendant has "the right to the government's assistance in compelling the attendance of favorable witnesses at trial and the right to put before a jury evidence that might influence the determination of guilt." *United States v. Valazquez-Fontanez,* 6 F.4th 205, 221-222 (1st Cir. 2021) *quoting Pennsylvania v. Ritchie,* 480 U.S. 39, 56, 107 S.Ct. 989, 94 L.Ed.2d 40 (1987).

Mr. Crater issued a subpoena to FBI Special Agent David Cirilli. Mr. Cirilli was one of the case agents assigned to the My Big Coin investigation. Mr. Cirilli testified before the grand jury that indicted Mr. Crater but the government did not call him as a witness at trial. The subpoena also requested that Mr. Cirilli bring copies of his communications with numerous individuals associated with My Big Coin.

Mr. Crater issued a subpoena to United States Postal Inspector Jan Kostka. Mr. Kostka was also a case agent assigned to the My Big Coin investigation who was not called as a witness by the government. The subpoena also requested that Mr. Kostka bring copies of his communications with various individuals associated with My Big Coin.

Finally, Mr. Crater issued a subpoena to Jason A. Mahoney, an attorney with the Commodity Futures Trading Commission ("CFTC"). Mr. Mahoney was one of the

3

attorneys conducting a parallel civil investigation with the Department of Justice into My Big Coin, generally, and Mr. Crater specifically. The subpoena also requested that Mr. Mahoney bring copies of his communications with various individuals associated with My Big Coin.

On the first day of trial, the government filed a "Supplemental Trial Brief Regarding *Touhy* Regulations." *See* Dkt. # 165. In this pleading the government asked the Court to "enforce the applicable *Touhy* regulations." In essence, the government was asking the Court to require the defense to comply with the various *Touhy* regulations by disclosing, in advance, what the defense wanted to ask these three witnesses.

The next day, Mr. Crater filed a Response to the government's Supplemental Trial Brief. *See* Dkt. # 167. Mr. Crater's response argued correctly that *Touhy* regulations do not apply in criminal cases and that *Touhy* regulations constitute an unlawful burden on his Sixth Amendment rights – a claim that the *Touhy* Court never reached.

On Jury Trial Day 4, the Court ruled that it saw no basis for allowing departure from the *Touhy* process citing a Fourth Circuit case, *U.S. v. Soriano-Jarquin*, 492 F.3d 495 (4th Cir. 2007) which held that compliance with the *Touhy* process was required in criminal cases. *See also United States v. Wallace*, 32 F.3d 921, 929 (5th Cir. 1994)(same); *United States v. Marino*, 658 F.2d 1120, 1125 (6th Cir. 1981)(same). In doing so, the Court rejected a Tenth Circuit case, *United States v. Bahamonde*, 445

F.3d 1225, 1228 (10th Cir. 2006) which held that excluding an agent's testimony on *Touhy* grounds violated due process and was not harmless error. As a result, the Tenth Circuit reversed Mr. Bahamonde's conviction.

Simply put, by following the 4th, 5th and 6th Circuit precedent and rejecting the 10th Circuit precedent, the Court violated Mr. Crater's Sixth Amendment's Compulsory Process Clause. Indeed, the *Touhy* regulations in their present form interferes, in a manner not authorized by Congress nor approved by the Supreme Court, with the proper exercise of Mr. Crater's Sixth Amendment rights. By requiring him to state the specific testimony he hoped to elicit from the witnesses he subpoenaed, the *Touhy* regulations obligate him to sacrifice his work-product privilege for the possibility (but not the certainty) that his exercise of a right secured to him by the Constitution will be honored.

The work-product privilege is well-settled law. *Hickman v. Taylor*, 329 U.S. 495 (1947). The doctrine, as described in *Hickman*, extends not only to documentary work-product but also to mental work product. *Id.* at 203. In civil practice, the privilege extends to "the mental impressions, conclusions, opinions, or legal theories of an attorney … concerning the litigation." Fed. R. Civ. P. 26(b)(3). In the criminal justice system, this privilege is even more vital. *United States v. Nobles*, 422 U.S. 225, 238 (1975)("The interests of society and the accused in obtaining a fair and accurate resolution of the question of guilt or innocence demand that adequate safeguards assure the thorough preparation and presentation of each side of the case.").

5

> Historically, a lawyer is an officer of the court and is bound to work for the advancement of justice while faithfully protecting the rightful interests of his clients. In performing his various duties, however, it is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel. Proper preparation of a client's case demands that he assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference. That is the historical and the necessary way in which lawyers act within the framework of our system of jurisprudence to promote justice and to protect their clients' interests. This work is reflected, of course, in interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other tangible and intangible ways—aptly though roughly termed by the Circuit Court of Appeals in this case as the 'Work product of the lawyer.' Were such materials open to opposing counsel on mere demand, much of what is now put down in writing would remain unwritten. An attorney's thoughts, heretofore inviolate, would not be his own. Inefficiency, unfairness, and sharp practices would inevitably develop in the giving of legal advice and in the preparation of cases for trial. The effect on the legal profession would be demoralizing. And the interests of the clients and the cause of justice would be poorly served.

*Id.* at 237 *quoting Hickman* at 510. In criminal practice, mental impression work-product is entitled to the very highest level of protection from invasion. *Nobles, supra* at 238 (its role in assuring the proper functioning of the criminal justice system is even more vital).

The *Touhy* regulations require a statement or affidavit that summarizes the testimony sought from a witness in the adversary's camp. Such a requirement completely eviscerates the privilege for mental impressions, strategies, and theories. Indeed, the Court's ruling in this case required Mr. Crater to forfeit this valuable privilege. This was the price that this Court required Mr. Crater to pay to present his

6

defense.  This price is too high and constitutes an unconstitutional burden on Mr. Crater's compulsory process rights.  *Bahamonde*, *supra* at 1228.

Indeed, the government can only invoke its evidentiary privileges at the price of letting Mr. Crater go.  *See United States v. Andolschek*, 142 F.2d 503, 506 (2nd Cir. 1944)(where government institutes criminal proceedings in which evidence, otherwise privileged under a statute or regulation, becomes importantly relevant, it abandons the privilege); *United States v. Beekman*, 155 F2d 580, 584 (2nd Cir. 1946)(same).  In *United States v. Reynolds*, 345 U.S. 1 (1953), the only Supreme Court case to mention *Touhy* since it was decided, Chief Justice Vinson explained the rationale for *Andolschek* and *Beekman*.  He wrote:

> The rationale of the criminal cases is that, since the Government which prosecutes an accused also has the duty to see that justice is done, it is unconscionable to allow it to undertake prosecution and then invoke its governmental privileges to deprive the accused of anything which might be material to the defense.  Such rationale has no application in a civil forum where the Government is not the moving party, but is a defendant only on terms to which it has consented.  *Id.* at 534.

By allowing the government to prevent Mr. Crater from calling witnesses and putting on his defense because he did not comply with the *Touhy* process, the Court effectively violated Mr. Crater's Sixth Amendment's Compulsory Process Clause.

### B. If Mr. Crater Ultimately Prevails On This Appellate Issue, The First Circuit Court of Appeals Will Likely Vacate His Conviction.

If the First Circuit Court of Appeals rules in favor of Mr. Crater on this question of first impression and holds that *Touhy* regulations can not be used to prevent the defense from calling witnesses in its case-in-chief, Mr. Crater's conviction will likely by vacated.  *See United States v. Rosario*, 957 F.3d 277, 292 (1st Cir. 2020

(conviction reversed when trial court erroneously excluded exculpatory evidence); *Valazquez-Fontanez*, supra at 222 (conviction reversed where district court failed to enforce a subpoena).

## CONCLUSION

Since Mr. Crater has satisfied the three criteria for his release, Mr. Crater respectfully requests that this Honorable Court order his release during the pendency of his appeal pursuant to 18 U.S.C. § 3143(b).

Respectfully submitted,
For the Defendant,
Randall Crater
By his attorneys:

/s/ *Scott P. Lopez*
Scott P. Lopez, BBO # 549556
splopez@lawson-weitzen.com
LAWSON & WEITZEN, LLP
88 Black Falcon Ave, Suite 345
Boston, MA 02210
617-439-4990 (tel.)
617-439-3987 (fax)

Dated: March 10, 2023

## CERTIFICATE PURSUANT TO LOCAL RULE 7.1

The undersigned counsel for Randall Crater hereby certifies that he conferred with AUSA Christopher J. Markham on March 10, 2023, by electronic mail, in a good faith attempt to resolve or narrow the issue raised in this motion.

                                                /s/ *Scott P. Lopez*
                                                Scott P. Lopez

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on March 10, 2023.

                                                /s/ *Scott P. Lopez*
                                                Scott P. Lopez