IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v.        )<br>)<br>RANDALL CRATER,   )<br>)<br>Defendant   ) | Criminal No. 19-cr-10063-DJC |

**GOVERNMENT'S OPPOSITION TO DEFENDANT'S
MOTION FOR RELEASE PENDING APPEAL (DKT. 263)**

The defendant seeks to avoid serving the sentence imposed by the Court during the pendency of his appeal. The defendant argues that he is likely to prevail on appeal based on the Court's decision to follow precedent—including *United States ex rel. Touhy v. Ragen,* 340 U.S. 462 (1951) and its progeny—as well as associated regulations. As discussed below, the defendant cannot establish any error, let alone error that is likely to result in reversal or a new trial. The Court should therefore deny the defendant's motion.

*I.    Factual and procedural background*

The defendant owned and operated the virtual currency company, My Big Coin, from approximately 2013 through 2018. The Commodity Futures Trading Commission ("CFTC") brought a lawsuit against the defendant and My Big Coin on January 16, 2018. *See CFTC v. My Big Coin Pay, Inc. et al.*, Case No. 18-cv-10077-RWZ. The defendant was subsequently indicted by a federal grand jury on February 26, 2019. Dkt. 1.

From the beginning of this case, the defendant was on notice that the CFTC and the Federal Bureau of Investigation ("FBI") had investigated My Big Coin. And further, on June 30, 2022, the government reminded counsel for the defendant (via email) that trial subpoenas to federal

agency personnel would have to comply with those agencies' regulations. The defendant never even attempted to comply with those regulations. *See, e.g.*, Day 4 Tr. 7:10-11 (the Court noting that there had not been "any attempt to comply with *Touhy*"). Instead, the defendant argued that *Touhy* was unconstitutional as applied to him at his criminal trial.

The government provided written briefing on the issue of applying *Touhy* regulations in this criminal case (Dkt. 165), and the defendant subsequently provided a written response (Dkt. 167). The Court addressed the issue at several points at trial, and ultimately ruled against the defendant on two distinct grounds: (1) that *Touhy* applied in criminal cases and the defendant failed to comply with the applicable *Touhy* regulations, and (2) regardless of the applicability of *Touhy* to criminal cases, the defendant failed to identify how the testimony would be relevant or material to his defense. Day 4 Tr. 6:8-7:21.

    II.    *The defendant must meet a high standard for release pending appeal*

The defendant has the burden of establishing that his appeal "raises a substantial question of law or fact" that is "likely to result in . . . reversal" or "an order for a new trial." 18 U.S.C. § 3143(b)(1)(B)(i), (ii). This provision "breaks down into two distinct requirements," namely: "(1) that the appeal raise a substantial question of law or fact and (2) that if that substantial question is determined favorably to defendant on appeal, that decision is likely to result in reversal or an order for a new trial of all counts on which imprisonment has been imposed." *United States v. Bayko*, 774 F.2d 516, 522 (1st Cir. 1985); *United States v. Zimny*, 857 F.3d 97, 99 (1st Cir. 2017). A "substantial question" is one that is "close" in the sense that it "very well could be decided the other way." *Bayko*, 774 F.2d at 523; *Zimny*, 857 F.3d at 100. The mere "possibility of reversal" does not warrant bail pending appeal, *Bayko*, 774 F.2d at 523, and questions are not "substantial" simply because they are "novel," not the subject of "controlling precedent," "undecided," or "fairly

debatable." *Id.* at 522-23. Further, an error that is harmless cannot meet the "likelihood prong." *Id.* at 523.

    III.    *The defendant fails to identify any error by the Court*

The defendant argues that the Court "violated Mr. Crater's Sixth Amendment right to compulsory process by requiring Mr. Crater to comply with the so-called *Touhy* regulations for" the FBI and CFTC. Def. Mot. at 1. The defendant is incorrect.

"Pursuant to 5 U.S.C. § 301, federal agencies may promulgate so-called *Touhy* regulations to govern the conditions and procedures by which their employees may testify about work-related issues at trial." *United States v. Soriano-Jarquin*, 492 F.3d 495, 504 (4th Cir. 2007); *see also Cabral v. U.S. Dep't of Just.*, 587 F.3d 13, 22 (1st Cir. 2009). The FBI has *Touhy* requirements for defendants who seek testimony of FBI agents. *See, e.g.*, 28 C.F.R. § 16.23(c). These requirements apply in criminal cases:

> The Department of Justice has a legitimate interest in regulating access to government information contained in its files or obtained by its employees during the scope of their official duties. Without a procedure governing demands by potential litigants, the efficiency of the Department could be greatly impaired. The question of whether these procedures deny the defendants their Sixth Amendment right to call and cross-examine witnesses is not reached until the defendants follow the procedures and then have their demands denied.

*United States v. Marino*, 658 F.2d 1120, 1125 (6th Cir. 1981). The CFTC also has *Touhy* requirements. *See, e.g.,* 17 C.F.R. § 144.3(a), (b). Those *Touhy* requirements apply to testimony of CFTC (and other federal regulatory agency employees) in federal criminal trials. *See, e.g., Soriano-Jarquin*, 492 F.3d at 504; *accord United States v. Timms*, 844 F. App'x 658, 659-60 (4th Cir. 2021) (unpublished opinion).

On appeal, the First Circuit gives a heavy measure of deference to the district court on *Touhy* disputes. *See United States v. Vazquez-Rosario*, 45 F.4th 565, 572 (1st Cir. 2002). This

deference, combined with the clear precedent on the enforceability of *Touhy* regulations, makes the defendant's claim highly unlikely to prevail on appeal. Additionally, the defendant's eleventh-hour attempt to litigate his *Touhy* challenge to this Court will cut against his appeal. Rather than comply with the agency regulations or promptly alert this Court of his objections before trial, the defendant ignored the regulations and issued trial subpoenas. The government objected, prompting the defendant to assert a *midtrial* Sixth Amendment claim (Dkt. 167). The First Circuit has expressly warned parties against such last-minute litigation. *See Vazquez-Rosario*, 45 F.4th at 572 n.8 (cautioning that "last-minute *Touhy* requests without any reasonable explanation of their timing may likely not be seen with favorable eyes").

Further, the defendant's reliance on *United States v. Bahamonde*, 445 F.3d 1225 (9th Cir. 2006), is misplaced. Def. Mot. at 4-5. As the Court noted at trial, *Bahamonde* is an "outlier" in the available precedent. Day 3 Tr. 6:18-7:2 (noting that the other federal appellate courts to address this issue had applied *Touhy* in criminal cases). And further, even under the standard set by *Bahamonde*, the defendant's argument still falls short.

In *Bahamonde*, the district court excluded the testimony of a DHS case agent because the defendant did not comply with a DHS *Touhy* regulation requiring a litigant to "set forth in writing, and with as much specificity as possible, the nature and relevance of the official information sought" from DHS witnesses. 6 C.F.R. § 5.45(a). After conviction, a divided panel of the Ninth Circuit reversed, holding that the DHS regulation, "as applied in this criminal prosecution, violates due process by failing to provide reciprocal discovery" by the government to the defendant. 445 F.3d at 1229. However, this case differs from *Bahamonde* in (at least) two critical aspects. First, unlike in *Bahamonde*, the defendant never argued, and still does not argue, that the applicable *Touhy* regulations were unconstitutional on reciprocal discovery grounds. *See* Dkt. 167. Second,

and again unlike in *Bahamonde*, this Court did not exclude testimony based on the defendant's failure to provide a pretrial disclosure containing "as much specificity as possible." *Id.* at 1228 (quoting the DHS regulation at 6 C.F.R. § 5.45(a)).  Instead, this Court found that the defendant failed to provide essentially any proffer establishing how the testimony was relevant or material to the defense, in addition to the fact that the defendant had not complied with any aspect of the *Touhy* regulations.  Day 4 Tr. 7:2-15.  In light of these differences, as well as the "outlier" status of *Bahamonde* itself, the defendant's argument is unlikely to prevail on appeal.

       IV.       *The defendant fails to identify any prejudice even assuming error*

Even if the Court assumes the merits of his challenge to the agencies' *Touhy* regulations, the defendant's conviction would be upheld because the sought-after testimony was irrelevant.  Given that the Court explicitly excluded the testimony on relevance grounds in addition to *Touhy* grounds, the *Touhy* dispute does not itself provide a basis for release pending appeal.  *Bayko*, 774 F.2d at 523.

Regardless of whether a defendant complies with their *Touhy* obligations, a defendant may not subpoena an agency employee if their testimony would be irrelevant.  For instance, testimony about the administrative investigation is irrelevant at a criminal trial. *United States v. Vander Luitgaren*, No. 2008 WL 2610465, at *1 (M.D. Fla. June 30, 2008) ("The Court holds that the testimony sought by [the defendant] from [the agency] lacks relevance. Whether or not [the agency] closed the case file or continued an investigation is not relevant at this [criminal] trial."). As another example, preliminary opinions by agency staff are inadmissible under Federal Rule of Evidence 403 due to the risk of jury confusion. *E.g., United States v. Klein*, 2017 WL 782326 at *5 (E.D.N.Y. Feb. 28, 2017) (quashing a subpoena for an SEC staff memorandum preceding the SEC's decision not to sue, because it would ask the jury to compare the SEC's decision not to file

civil charges with DOJ's decision to file criminal charges); *SEC v. Buntrock*, 2004 WL 1470278, at *3–4 (N.D. Ill. June 29, 2004) (holding improper defendant's attempt to discover "the mental impressions, conclusions and legal theories of the SEC's attorneys involved in the litigation").

In this case, the government explicitly objected to the testimony of agency witnesses on relevance grounds.  *See, e.g., Gov't Suppl. Trial Brief*, Dkt. 165 at 2-3; Day 2 Tr. 5:17-18; Day 3 Tr. 7:15-9:7.  After hearing argument from the defendant on this issue, the Court agreed with the government, explaining "I don't think it amounts to a deprivation of a defense here where it's not clear from the proffer that the testimony would be relevant, material, and vital to the defense." Day 4 Tr. 7:2-5.

In his most recent motion, the defendant still does not provide any insight as to how the testimony of agency employees was material to his defense.  That omission is fatal to his Sixth Amendment appellate claim because, to establish a violation of his right to compulsory process, the defendant "must at least make some plausible showing of how [the absent witnesses'] testimony would have been both material and favorable to his defense." *United States v. Valenzuela-Bernal*, 458 U.S. 858, 867 (1982).  The Court should therefore deny the defendant's motion because the error, if any, was harmless. *Bayko*, 774 F.2d at 523.

                        Respectfully submitted,

                        RACHAEL S. ROLLINS
                        United States Attorney

By:    */s/ Christopher J. Markham*
        CHRISTOPHER J. MARKHAM
        Assistant United States Attorney

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that this document was filed through the ECF system and will be sent electronically to the registered participants identified on the Notice of Electronic Filing (NEF).

Dated: March 13, 2023

By: */s/ Christopher J. Markham*
CHRISTOPHER J. MARKHAM
Assistant United States Attorney