UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 19-cr-10063-DJC |
| | ) | |
| RANDALL CRATER, | ) | |
|     Defendant | ) | |

DEFENDANT RANDALL CRATER'S MOTION FOR RECONSIDERATION OF
HIS EMERGENCY MOTION FOR RELEASE PENDING APPEAL
_____

    Defendant Randall Crater, by and through undersigned counsel, requests this Honorable Court, to reconsider his request, pursuant to 18 U.S.C. § 3143(b), to order his release during the pendency of his appeal because Mr. Crater satisfies the three criteria required by § 3143 for his release. First, he is not likely to flee and does not pose a danger to the safety of any other person or the community. Indeed, the Court's denial of his motion does not state otherwise. *See* Electronic Order re: [263] Motion for Release During the Pendency of His Appeal. Dkt. # 268.

    Second, the Court did not deny his Motion for Release on the basis that his appeal is for the purpose of delay. Rather, the Court denied his motion on the basis that "the Court does not conclude that Crater has raised an issue on which he is likely to prevail on appeal" and "Even assuming arguendo that he had, neither the record nor his motion and reply show how the testimony that he sought from agency witnesses would have been material and favorable to his defense, *see* D. 264 at 6, such that it would likely result in reversal or an order for a new trial." Dkt. # 268.

However, the Court never requested a proffer on either agency witness. Moreover, *United States v. Valenzuela-Bernal*, 458 U.S. 858, 867 (1982), is distinguishable on two grounds. First, it was not a case involving the application of *Touhy*. Second, the agency witnesses were the lead investigatory agents in the case. As such, any evidence deemed favorable by the defense would be material.

Indeed, the government's suggestion that Mr. Crater was required to make a proffer showing the testimony was material and favorable to the defense is misplaced. Clearly, if the agents did not have evidence material and favorable to the defense, the government would have called them as witnesses.

The problem with the *Touhy* process is that the government gets to determine, rather than the Court, whether the testimony is favorable and material before producing the witness to testify. In other words, the defense must disclose to the government its reasons for calling the witness before the government decides whether to comply with a subpoena. It is the forced disclosure pretrial which violates defendant's right to compulsory process.

However, had the Court requested a proffer, the Court would have learned that Agent Cirilli testified before the grand jury before the original Indictment in the case. Agent Cirilli testified that he conducted a parallel investigation with the CFTC. He did not testify that he told Mr. Crater that he was conducting a criminal investigation at the same time the CFTC was requesting voluminous discovery in the civil case. He would have testified that, prior to his grand jury testimony, he reviewed

voluminous information received from the CFTC and that by the time of his testimony the CFTC had filed a Complaint and an Amended Complaint in the civil action.

He would have testified that Randall Crater was the creator and developer of My Big Coin and My Big Coin Pay but that John Roche was an Officer and Director of My Big Coin and the President of My Big Coin Pay. He would have testified that Michael Kruger and Mark Gillespie were promoters of My Big Coin. He did not testify that Mr. Crater was selling My Big Coin. He would have testified that Mark Gillespie and Michael Kruger were selling My Big Coin and sending wiring instructions.

He would have testified that a virtual currency is a digital asset or digital representation of value that can be electronically traded and exchanged online. This is important because prior to June 2017, My Big Coin was represented to be a virtual currency and not a cryptocurrency on the My Big Coin website.

He would have testified that, at the time of his testimony in 2019, the scheme to defraud was to falsely claim, *inter alia*, that the coins were a functioning "virtual currency" rather than a functioning cryptocurrency as alleged at trial. This is important because the government's expert testified My Big Coin was not a cryptocurrency before 2017. However, she offered no opinion on whether it was a virtual currency prior to 2017.

He would have testified that the social media accounts, including the Twitter account, was associated with the email address mybigcoin@gmail.com and that this email address was used primarily by John Roche. He would have testified that the first tweet about gold was made on March 6, 2014 and that the tweet said "My Big

3

Coin has entered into a contract where all My Big Coin's will be backed by 100% gold." Agent Cirilli did not testify that Randall Crater was in charge of the content for the website, or for Twitter or for any other social media.

Agent Cirilli would have testified that Mark Gillespie claimed that the information he was repeating came from John Roche, Michael Kruger, and Randall Crater, but he did not testify as to what each person told him. Agent Cirilli would have testified that Michael Kruger told him that the information he was repeating came from John Roche and Randall Crater. However, Agent Cirilli did not testify as to what each person told him.

Given the above, it is understandable why the government did not call Agent Cirilli. It is also understandable why the government wanted to keep this material and favorable evidence from the jury.

ARGUMENT

The government refused to make certain government witnesses available for trial because the defense failed to comply with *Touhy* regulations. In short, the government's position is that, having brought this criminal prosecution against Mr. Crater, the Executive branch also has the unilateral power to determine whether its agencies will or will not comply with the defense's attempt to subpoena witnesses to appear in Mr. Crater's defense.

The government's position misstates the law on *Touhy* and violates both Mr. Crater's Fifth Amendment right to put on a defense and his Sixth Amendment right to compulsory process in service of that defense. "[S]ince the Government which

4

prosecutes an accused also has the duty to see that justice is done, it is unconscionable to allow it to undertake prosecution and then invoke its governmental privileges to deprive the accused of anything which might be material to his defense." *United States v. Reynolds*, 345 U.S. 1, 12 (1953).

Mr. Crater possessed a Sixth Amendment right to mount a defense to his prosecution. *See, e.g., Faretta v. California*, 422 U.S. 806, 818 (1975) ("In short, the [Sixth] Amendment constitutionalizes the right in an adversary criminal trial to make a defense as we know it."). "Few rights," in fact, "are more fundamental than that of an accused to present witnesses in his own defense." *Taylor v. Illinois*, 484 U.S. 400, 408 (1988). Central to that right is the companion Sixth Amendment right to compulsory process. "Our cases establish, at a minimum, that criminal defendants have the right to the government's assistance in compelling the attendance of favorable witnesses at trial and the right to put before a jury evidence that might influence the determination of guilt." *Id.*

   A.   *Touhy* Does Not Apply Because The Government Was A Party.

With this constitutional background in mind, it is unsurprising then that *United States ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951), was never intended to have applicability in a criminal prosecution brought by the U.S. government. *See, e.g., Touhy*, 340 U.S. at 467 ("Nor are we here concerned with the effect of a refusal to produce in a prosecution by the United States."). This point has been repeatedly recognized by numerous courts. *See, e.g., Louisiana v. Sparks*, 978 F.2d 226, 234 (5th Cir.1992) ("As the Supreme Court has long held, [*Touhy*] regulations unquestionably

5

give Justice Department employees the authority, when so ordered by superiors, to refuse to comply with a subpoena ordering disclosure of a confidential file when the United States is not a party to a legal action."); *Boron Oil Co. v. Downie*, 873 F.2d 67, 70 (4th Cir. 1989) (considering *Touhy* and stating that "[t]he policy behind such prohibitions on the testimony of agency employees is to conserve governmental resources where the United States is not a party to a suit, and to minimize governmental involvement in controversial matters unrelated to official business."); *Alexander v. F.B.I.*, 186 F.R.D. 66, 70-71 (D.D.C. 1998) ("The Supreme Court's holding in *Touhy* is applicable only in cases where the United States is not a party to the original legal proceeding."). *Cf. COMSAT Corp. v. Nat'l Sci. Found.*, 190 F.3d 269, 278 (4th Cir. 1999) ("When an agency is not a party to an action, its choice of whether or not to comply with a third-party subpoena is essentially a policy decision about the best use of the agency's resources."). In short, "[i]n cases originating in federal court in which the federal government is a party to the underlying litigation, the *Touhy* problem simply does not arise." *Alexander*, 186 F.R.D. at 70.

This makes sense. *Touhy* was concerned with the operation of the executive branch if its employees were regularly subject to being subpoenaed to testify in cases where the government itself has no interest. *See, e.g., Boron Oil Co.,* 873 F.2d at 70 ("[t]he policy behind such prohibitions on the testimony of agency employees is to conserve governmental resources where the United States is not a party to a suit, and to minimize governmental involvement in controversial matters unrelated to official business."). Indeed, *Touhy* regulations reflect federal sovereign immunity against

6

efforts to subpoena documents and information from the federal government outside of the provisions of the Administrative Procedures Act. *COMSAT Corp. v. Nat'l Sci. Found.,* 190 F.3d 269, 277 (4th Cir. 1999) (explaining in context of NSF *Touhy* regulations that "it is sovereign immunity, not housekeeping regulations, that gives rise to the Government's power to refuse compliance with a subpoena."). But "[t]he limitations on a state court's subpoena and contempt powers stem[ming] from the sovereign immunity of the United States and from the Supremacy Clause . . . . do not apply when a *federal* court exercises its subpoena power against federal officials." *Exxon Shipping Co. v. U.S. Dep't of Interior*, 34 F.3d 774, 778 (9th Cir. 1994) (emphasis in original). As such, a federal subpoena issued in the context of this federal criminal case brought by the United States for relevant testimony is not subject to refusal based on *Touhy* regulations. That is why *Touhy* does not apply when the executive itself has initiated suit.

Were it otherwise the government could unfairly operate as both a sword and a shield, bringing a prosecution and then denying the defendant access to witnesses in his own defense—a proposition the courts have roundly rejected. "[J]udicial control over the evidence in a case cannot be abdicated to the caprice of executive officers." *United States v. Reynolds,* 345 U.S. 1, 9–10 (1953); *Committee for Nuclear Responsibility, Inc. v. Seaborg,* 463 F.2d 788, 794 (D.C.Cir.1971) ("[N]o executive official or agency can be given absolute authority to determine what documents in his possession may be considered by the court in its task."); *EEOC v. Los Alamos Constructors, Inc.*, 382 F. Supp. 1373, 1375 (D.N.M. 1974) ("[w]hen the government

or one of its agencies comes into court ... it is to be treated in exactly the same way as any other litigant. Appointment to office does not confer upon a bureaucrat the right to decide the rules of the game applicable to his crusades or his lawsuits."). And yet that is precisely the position the government has taken in Mr. Crater's case, arguing that though the executive has brought this prosecution, its officers and employees are not subject to compulsory process if the defense fails to comply with and endure *Touhy* regulation requirements.

      B.      If Mr. Crater Ultimately Prevails On This Appellate Issue, The First Circuit Court of Appeals Will Likely Vacate His Conviction.

If the First Circuit Court of Appeals rules in favor of Mr. Crater on this question of first impression and holds that *Touhy* regulations cannot be used to prevent the defense from calling witnesses in its case-in-chief, Mr. Crater's conviction will likely by vacated. *See United States v. Rosario*, 957 F.3d 277, 292 (1st Cir. 2020 (conviction reversed when trial court erroneously excluded exculpatory evidence); *Valazquez-Fontanez*, supra at 222 (conviction reversed where district court failed to enforce a subpoena).

## CONCLUSION

Accordingly, Mr. Crater respectfully requests that this Honorable Court reconsider its Order denying his Motion for Release and Order his release during the pendency of his appeal pursuant to 18 U.S.C. § 3143(b).

Respectfully submitted,
For the Defendant,
Randall Crater
By his attorneys:

 /s/ *Scott P. Lopez*
Scott P. Lopez, BBO # 549556
splopez@lawson-weitzen.com
LAWSON & WEITZEN, LLP
88 Black Falcon Ave, Suite 345
Boston, MA 02210
617-439-4990 (tel.)
Dated: March 27, 2023         617-439-3987 (fax)

## CERTIFICATE PURSUANT TO LOCAL RULE 7.1

The undersigned counsel for Randall Crater hereby certifies that he conferred with AUSA Christopher J. Markham on March 27, 2023, by electronic mail, in a good faith attempt to resolve or narrow the issue raised in this motion.

 /s/ *Scott P. Lopez*
Scott P. Lopez

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on March 27, 2023.

 /s/ *Scott P. Lopez*
Scott P. Lopez